## A98A0350. WHITEHEAD v. THE STATE.
### (499 SE2d 922)

POPE, Presiding Judge.

For his invasion of a Burger King and his attack on its assistant manager, a jury convicted Rodney Ravon Whitehead of armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. He appeals. We find the evidence sufficient to support the conviction. We must reverse, however, because the trial court improperly required defense counsel to tender into evidence a prior inconsistent statement, thereby depriving Whitehead of his right to final closing argument.

1. The evidence showed that Whitehead had worked with the victim, an assistant manager at the Burger King in question, for a month and knew Burger King's procedures and schedules. During that time, the victim became familiar with Whitehead's voice and physical attributes. The attack occurred three weeks after the assistant manager fired Whitehead for tardiness and absenteeism. As the victim was opening the business around 5:00 a.m., she was accosted by two men whose faces were disguised by black ski masks. One of the men held a gun to the victim's head and forced her into the restaurant's office. The other man, later identified as Whitehead, quickly found the proper light switch, turned on the light, and demanded the victim open the safe. When she had trouble doing so, he told her, "aw, [expletive], you know you know how to open that safe." At that point the assistant manager recognized Whitehead's voice, as he had often used that expletive when referring to women. After the victim opened the safe and took the money inside, Whitehead forced her to the back of the store and, pointing to an unlabeled door, told his partner, "put her in the freezer." During this time the assistant manager was able to view Whitehead and further recognized him by his physical build. Evidence in the case showed that the freezer to which Whitehead pointed was adjacent to another identical, unmarked cooler door. When the criminals left, the victim called

police, told the responding officer that Whitehead was one of the assailants, and gave the officer Whitehead's address. The officer went to that address and could not find Whitehead there. In his own defense, Whitehead testified he was at home sleeping when the robbery occurred.

This evidence was sufficient to allow a reasonable jury to find Whitehead guilty beyond a reasonable doubt of these charges. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The voice identification testimony, along with circumstantial evidence showing the invaders were familiar with the internal operations and layout of Burger King, allowed the jury to reach its conclusions. See *Stirrat v. State*, 226 Ga. App. 350, 351 (1) (486 SE2d 640) (1997).

2. The trial court erred, however, when it required Whitehead's counsel to tender into evidence a document he used in his attempt to impeach the assistant manager's testimony with a prior inconsistent statement. The assistant manager claimed she told the responding officer that the attackers had guns and that she recognized Whitehead's voice. Defense counsel asked her to examine a copy of the written statement she first gave police, and she acknowledged the statement was hers. When Whitehead's attorney pointed out that her written statement contained no mention of guns, the State objected on grounds that the document was not in evidence. The court sustained the objection, telling counsel, "If you want to go into the contents of a document, it doesn't matter whether you're doing it for impeachment or not, you've got to have it in evidence." Whitehead's attorney acquiesced, and the written statement was marked as an exhibit and admitted in evidence. Contrary to the dissent's position, the fact that the trial court sustained the State's objection was sufficient to preserve the error for appellate review, and Whitehead was not required to further object or take exception to the trial court's ruling. "There is, of course, no longer any requirement in Georgia that counsel except to an adverse ruling by the trial court in order to preserve the issue for appeal. [Cits.]" *Stone v. State*, 177 Ga. App. 750, 752 (4) (341 SE2d 280) (1986). See also *Ford v. State*, 200 Ga. App. 376 (408 SE2d 166) (1991).

Whitehead correctly argues that he should not have been required to tender the document into evidence to elicit the impeaching prior inconsistent statement. The proper method for impeaching a witness with a prior inconsistent statement is codified in OCGA § 24-9-83. In *Duckworth v. State*, 268 Ga. 566, 568-569 (492 SE2d 201) (1997), the court held that statute "does not require that the prior inconsistent statement be admitted into evidence before it is used for impeachment purposes. Nor does the case law mandate the introduction of the prior written statement into evidence before ques-

tioning the witness. . . . [T]he purpose behind laying a foundation for impeachment is met by showing or reading the prior written statement to the witness before asking questions about it. . . ." (Paragraph indentions omitted.) Therefore, the trial court erred when it prohibited Whitehead from questioning the witness regarding a prior inconsistent statement contained in a document not admitted in evidence.

Although the trial court's error could under different circumstances be considered harmless error, we find Whitehead has shown "presumptive harm" because, to pursue his attempt at impeaching the witness, he was required to introduce evidence and forfeit his right to open and conclude the closing argument. See OCGA § 17-8-71; *Givens v. State*, 264 Ga. 522, 523 (1) (448 SE2d 687) (1994); *Hubbard v. State*, 167 Ga. App. 32, 35 (7) (305 SE2d 849) (1983). The cross-examination of a witness does not constitute the introduction of evidence under OCGA § 17-8-71. *Kennebrew v. State*, 267 Ga. 400, 404 (4), n. 2 (480 SE2d 1) (1996). But here, the court erroneously required Whitehead to choose between effectively cross-examining the witness and giving up the final argument.

Although Whitehead did not object to the court's declaration that the State would have the right to conclude, the question of waiver of error is not before us.[1] If Whitehead *had* objected to the order of argument, as the dissent would require, that objection would have been properly overruled because Whitehead *did* introduce evidence, even though he did so pursuant to an erroneous ruling of the trial court. Rather, the issue is whether the court's action in sustaining the state's original objection *harmed* Whitehead because it deprived him of the "valuable" right to the final word. See *Hubbard*, 167 Ga. App. at 35. The evidence against Whitehead was strong, but not overwhelming. The case largely turned on the credibility of the victim, who did not see Whitehead's face. Under the circumstances, we cannot find the presumption of harm to be overcome. See *Givens*, 264 Ga. at 523. Therefore, the convictions must be reversed and the case remanded for retrial.

3. As our holding in Division 2 requires reversal of the case, and we find that Whitehead raises no other errors likely to recur on retrial, we need not address the remaining enumerations.

*Judgment reversed. Blackburn, Ruffin and Eldridge, JJ., concur. Andrews, C. J., McMurray, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

Although I concur in Division 1, which rules that the evidence

---

[1] Compare *Scott v. State*, 243 Ga. 233, 234 (2) (253 SE2d 698) (1979) (failure to object to court's ruling on order of argument constitutes waiver).

was sufficient to support the verdict beyond a reasonable doubt, I do not agree that the loss of concluding argument constituted reversible error.

The reason is two-fold. First, defendant did not object. When defendant first sought to use the document without tendering it, he responded to the State's objection by merely stating that it was for impeachment purposes and offered no authority for allowing such use without the document being admitted as evidence. Instead, he acquiesced in the court's ruling ("Okay") and tendered the document, which was admitted without objection.[2]

Then, after defendant testified as his only witness and the State introduced no rebuttal evidence, and after the charge conference out of the jury's presence, the court announced that "under the rules of procedure which govern a trial such as this one, the State has the opportunity to open and conclude closing arguments." According to the Supreme Court of Georgia, "[t]he purpose in allowing an accused with no defense to have the opening and concluding argument is to allow his counsel every opportunity to persuade the jury that the State has failed to prove his guilt."[3] Defendant did not object to the trial court's orchestration but instead proceeded to give his closing argument when the State waived the opening. No right to close was asserted after the State closed. Defendant did not complain of this in his motion for new trial either.

Failure to object on the ground that he was not required by law to admit the victim's statement into evidence waived the error. The Supreme Court of Georgia ruled in *Scott v. State*, 243 Ga. 233, 234-235 (2) (253 SE2d 698) (1979): "When the court announced that the state would have opening and closing arguments, appellant made no objection, and enumerates the error for the first time on appeal. A party cannot during the trial ignore what he thinks to be an injustice, take his chances on a favorable verdict, and complain later. [Cit.] Out of this principle evolves the further premise that matters not objected to at trial cannot be raised for the first time on appeal. [Cit.]" This is precisely that situation.

Second, although the OCGA § 17-8-71 right to open and conclude, when defendant introduces no evidence other than his own testimony, is a valuable right, failure to afford this right does not require a new trial where the evidence of guilt is overwhelming. *Scott*, supra at 235; see *Seyden v. State*, 78 Ga. 105, 109 (4) (1886)

---

[2] Compare *Kennebrew v. State*, 267 Ga. 400, 404 (4) (480 SE2d 1) (1996) (defendant who presents evidence under guise of cross-examination loses right to open and close); *Warnock v. State*, 195 Ga. App. 537, 538 (2) (394 SE2d 382) (1990) (prior statement used on cross-examination to impeach, admitted in evidence, right to open and close waived).

[3] *Yeomans v. State*, 229 Ga. 488, 492 (4) (192 SE2d 362) (1972).

(proof so strong it overcame presumption of harm); *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976) (highly probable that error did not contribute to verdict because evidence overwhelming); *Matthews v. State*, 268 Ga. 798, 803 (4) (493 SE2d 136) (1971) ("it is fundamental that harm as well as error must be shown for reversal"); *Seavers v. State*, 208 Ga. App. 711, 712 (3) (431 SE2d 717) (1993) (even if defendant should have had closing, overwhelming evidence of guilt made error harmless). That is the case here.

The victim recognized the defendant during the robbery and named him immediately in her call to police, the police went to the apartment he shared with his mother but he was absent, the victim confirmed her identification by hearing him speak several hours later at the police station, and the sole defense was that the victim was mistaken and Whitehead was at home sleeping at the time of the robbery. The victim had worked together with defendant for about a month before she fired him three weeks before the robbery. Defendant knew the restaurant's standard opening procedure which was begun by the victim on the morning of the robbery because he had worked that shift. During the robbery he used the same derogatory term as a substitute for "women" which the victim testified he had "always" used at work.

The fact that the defendant did not have the last word with the jury could not have affected the verdict to his detriment.

I am authorized to state that Chief Judge Andrews and Presiding Judge McMurray join in this dissent.

DECIDED APRIL 9, 1998 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Warren A. Sellers*, for appellant.
Rodney R. Whitehead, *pro se*.
*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.