### A98A2012. ALDRIDGE v. THE STATE.
(515 SE2d 397)

POPE, Presiding Judge.

A jury convicted William Nelson Aldridge of possession of methamphetamine with intent to distribute (OCGA § 16-13-30), possession of less than one ounce of marijuana (OCGA § 16-13-30), driving under the influence of drugs (OCGA § 40-6-391), operating a motor vehicle with an expired license plate (OCGA § 40-2-80), driving without headlights (OCGA § 40-8-20), and no proof of insurance (OCGA § 40-6-10). Aldridge appeals from the order denying his motion for new trial, raising eight enumerations of error. We affirm.

1. Aldridge contends the trial court erred in denying his motion

for a directed verdict on Counts 1 and 2 of the indictment, possession of methamphetamine with intent to distribute and possession of less than one ounce of marijuana. The standard of review for a denial of a motion for directed verdict of acquittal when the sufficiency of evidence is challenged is whether, under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt the defendant guilty of the offenses charged. *Cantrell v. State*, 230 Ga. App. 693, 694-695 (1) (498 SE2d 90) (1998); *Cody v. State*, 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996). In reviewing the denial of a motion for directed verdict, we may consider all the evidence in the case, and we must view the evidence in the light most favorable to the verdict. *Covington v. State*, 226 Ga. App. 484 (1) (486 SE2d 706) (1997). Viewed in this light, the record reveals the following:

On September 23, 1997, at about 1:53 a.m., Mitchell County Sheriff's Deputies Luckey and Hayes observed a car traveling toward them on Highway 300. The car was being operated without headlights. Just as the deputies activated their blue lights and turned the patrol car around to follow, the driver pulled over onto the shoulder of the highway. As the deputies drove up behind the car, they saw the driver reach over the seat as if he were placing something on the floorboard behind the passenger seat.

Although Aldridge was able to produce a valid driver's license, he had no proof of insurance. Aldridge searched through the front of the vehicle, looking for an insurance card while explaining to the deputies that he was driving a car that belonged to a friend, Jody Cox. The deputies had their dispatcher telephone Cox; Cox claimed the car but admitted he had no insurance. While Aldridge was looking through the car trying to find an insurance card, the deputies noticed the car's tag had expired. They also observed signs that Aldridge was intoxicated: his speech was slurred, his eyes were glassy, his gait was unbalanced, and he leaned frequently on the car. The deputies asked Aldridge if he was under the influence of alcohol. Aldridge said "no" and agreed to take an alco-sensor test. The deputies then radioed a senior deputy, Allegoode, who had the alco-sensor device. While awaiting Deputy Allegoode's arrival, the deputies asked Aldridge if he would consent to a search of his car. Aldridge agreed.

While en route, Deputy Allegoode radioed for a wrecker to tow Aldridge's car. When Allegoode arrived, he administered the alco-sensor test, which Aldridge passed with a .00 test result. The deputies did not perform any other field sobriety tests because Aldridge was so unsteady on his feet. Although Aldridge passed the alco-sensor test, the deputies still suspected Aldridge was under the influence of something because he had been driving without headlights

and showed signs of intoxication. When asked if he was under the influence of any medication, Aldridge responded "no." When asked if he had any contraband in the car, Aldridge again responded "no" and told the deputies they could search his car. He even agreed to sign a consent to search form. However, the deputies were out of consent forms.

Deputy Luckey searched Aldridge's car. He found a black plastic glasses case on the floorboard behind the passenger's seat. A plastic bag was sticking out from the corner of the case. Inside the bag was less than an ounce of a green leafy material which tested positive for marijuana. The deputies also found in the case a plastic bag containing a large chunk and several individually packaged smaller "rocks" of a white substance which tested positive for methamphetamine. The large chunk and the individually packaged rocks of methamphetamine had a combined weight of 18.8 grams and an estimated street value of $1,800. A drug task force agent testified that the amount of methamphetamine found, its street value, and the way it was packaged evidenced a plan to distribute the drug. The deputies also found a small glass vial and a butane torch in the car. The vial and the torch are often used to smoke methamphetamine. The vial contained methamphetamine residue.

Upon discovering the suspected contraband, deputies Hayes and Luckey placed Aldridge under arrest. Deputy Luckey read Aldridge the implied consent warning and asked him to submit to a urine test. Aldridge refused. When they arrived at the police station, the deputies again read Aldridge his implied consent warning and asked him to consent to a urine test. Again, Aldridge refused. During the course of the entire incident, Aldridge never offered an explanation for why he was driving without his headlights. The deputies found nothing wrong with the car. Aldridge did tell the officers he was driving to the gas station to get gasoline. However, the station he said he was going to had been closed for several hours.

At trial, Jody Cox testified that the car Aldridge was driving and the glasses case found in it belonged to him. But Cox testified that when Aldridge took the car Cox had no reason to believe there was any contraband in it. The drugs were not his. Further, he had no reason to believe that anyone else who had access to the car would have put drugs in it.

Aldridge argues that mere presence in the vicinity of contraband, without more, does not establish possession and there must be a showing of possession by him other than mere spatial proximity. While we agree with those principles of law, they are inapplicable here. Although Aldridge was driving a borrowed car and the drugs were discovered in a place out of Aldridge's view, the circumstantial evidence was sufficient to show Aldridge had sole, actual possession

of the drugs.

First, when the deputies blue-lighted the car, they saw Aldridge reach over the driver's seat as if he were concealing something behind the passenger's seat where the contraband was in fact found. Second, although others may have had access to the car prior to Aldridge's driving it, Jody Cox testified that he had no knowledge of the drugs being in his car or in his glasses case. Further, Cox had no reason to believe that anyone else who may have had access to the car would have put drugs in it. Third, Aldridge appeared intoxicated. His speech was slurred; his eyes, glassy; his gait, impaired. Fourth, although Aldridge agreed to take an alco-sensor test, and passed it, he declined to take a urine test. The jury was authorized to infer from this that a urine test would reveal the presence of methamphetamine or marijuana in Aldridge's system. See *Rayburn v. State*, 234 Ga. App. 482 (506 SE2d 876) (1998); *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988). Further, if the jury inferred the presence of drugs in Aldridge's system, they were authorized to infer that he previously possessed the drugs ingested. See *Green v. State*, 260 Ga. 625, 626 (1) (398 SE2d 360) (1990).

This evidence shows a connection between Aldridge and the contraband that goes beyond mere spatial proximity. In fact, the evidence and all the inferences logically drawn from the evidence supports a conclusion that Aldridge had direct, physical control over the drugs because he had been using them and had concealed them when the deputies pulled him over. Consequently, we believe this evidence, though largely circumstantial, was sufficient to support the jury's finding that Aldridge was in sole, actual possession of the methamphetamine and marijuana found in the car. See, e.g., *Noble v. State*, 225 Ga. App. 470, 471 (484 SE2d 78) (1997); *Heath v. State*, 186 Ga. App. 655, 656-657 (1) (368 SE2d 346) (1988). Also, the state offered physical evidence and expert opinion testimony from which a jury could infer Aldridge's intent to resell the methamphetamine he possessed, e.g., *James v. State*, 214 Ga. App. 763, 764 (1) (449 SE2d 126) (1994). Because the evidence is sufficient to support Counts 1 and 2 of the indictment, we find no error.

2. Aldridge argues that his refusal to submit to a urine test should not have been admitted into evidence because his arresting officers failed to read the implied consent warning in strict compliance with OCGA § 40-5-67.1 (b). Aldridge raised this as error for the first time in his motion for new trial. Aldridge has not shown, and the transcript before us does not reveal, that Aldridge filed a motion in limine or interposed a timely objection to this evidence on this basis at trial. Consequently, this allegation of error is not preserved for our review. *Kollman v. State*, 231 Ga. App. 630 (1) (498 SE2d 745) (1998).

3. Aldridge argues the trial court erred in denying his motion to suppress the methamphetamine and marijuana evidence because it was obtained as the result of an illegal, warrantless search of his car. Specifically, Aldridge argues that because he was detained for approximately 45 to 50 minutes before giving his consent to search, he was "in custody" and his consent was, therefore, invalid. We do not agree.

The fact that Aldridge's car was being driven without headlights, creating a traffic hazard, authorized the officers to investigate Aldridge's condition as well as that of the car. See *Pupo v. State*, 187 Ga. App. 765 (1) (371 SE2d 219) (1988); *Gabbidon v. State*, 184 Ga. App. 475, 476 (2) (361 SE2d 861) (1987). The deputies spent some time initially checking Aldridge's license and searching for proof that Aldridge's car was insured. During this initial investigation, Aldridge exhibited signs of intoxication. Upon request, Aldridge agreed to take an alco-sensor test. However, because Deputy Allegoode had the alco-sensor device, Aldridge had to wait 15 to 30 minutes for him to arrive. When Aldridge passed the alco-sensor test, the deputies suspected his symptoms of intoxication were caused by a drug and, consequently, asked to search the car. Having effected a valid traffic stop, the officers were authorized to request consent to search the automobile. *Gamble v. State*, 223 Ga. App. 653, 656 (3) (478 SE2d 455) (1996). Aldridge agreed and offered to sign a consent form. Before the deputies actually searched the car, they spent about 10 to 15 minutes looking for the consent to search forms, but found none. The total elapsed time from the initial stop to the search was, at the most, approximately 45 to 50 minutes.

We do not believe that the delays occasioned by the wait for Deputy Allegoode and his alco-sensor device and by the deputies' search for consent forms was unreasonable, evidenced a lack of diligence, or converted the investigation into a custodial situation. "The stop did not exceed the bounds of an investigative detention, so [Aldridge's] consent to search was not the product of an illegal detention. The evidence supports the court's finding that his consent was freely and voluntarily given." *Taylor v. State*, 230 Ga. App. 749, 751 (1) (c) (498 SE2d 113) (1998); *Sutton v. State*, 223 Ga. App. 721, 722 (1) (478 SE2d 910) (1996); *Mallarino v. State*, 190 Ga. App. 398, 400 (2) (379 SE2d 210) (1989).

4. In his fourth enumeration of error, Aldridge claims the trial court erred in refusing to suppress the .00 alco-sensor test result because the test was administered before Aldridge was given *Miranda* warnings. Of course, as we have repeatedly stated, *Miranda* warnings are only required when a person is taken into custody or otherwise deprived of his freedom of action in some significant way. *State v. Kirbabas*, 232 Ga. App. 474 (502 SE2d 314) (1998). As we stated

above, the investigatory delays in this case did not convert Aldridge's detention into custody. Consequently, *Miranda* warnings were not required prior to administering the alco-sensor test. Id.

5. Aldridge also enumerates as error the trial court's admission of a photograph taken of him at the Mitchell County jail shortly after his arrest. Aldridge objected, stating that the photograph improperly placed his character into evidence. The photograph was introduced to identify Aldridge and to show his appearance shortly after his arrest. The photograph does not suggest that he had been the subject of prior arrests or convictions for other offenses. "It is well settled that the mere admission into evidence of a picture of defendant with an identifying number does not indicate that the defendant was guilty of any previous crime and does not place his character in issue." (Citations and punctuation omitted.) *Dorsey v. State*, 183 Ga. App. 409 (1) (359 SE2d 195) (1987). Further, the photograph did show Aldridge's appearance shortly after his arrest and thus was relevant as some evidence of his intoxication. *Mattarochia v. State*, 200 Ga. App. 681, 683 (4) (409 SE2d 546) (1991). We find no error.

6. Aldridge argues the court erred in refusing to allow him both opening and closing final arguments in violation of OCGA § 17-8-71. OCGA § 17-8-71 provides: "After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of the state is closed."

While cross-examining the State's witnesses, Aldridge identified two exhibits and marked them as Defendant's Exhibits 1 and 2. During his cross-examination of Deputy Hayes, Aldridge marked as Defendant's Exhibit 1 Deputy Hayes' supplemental report of Aldridge's arrest. After doing so, he handed the report to Deputy Hayes and had him read into evidence highlighted portions of it. During his cross-examination of Deputy Allegoode, Aldridge marked as Defendant's Exhibit 2 a copy of Deputy Allegoode's arrest report. After doing so, he handed Allegoode the report and had him read highlighted portions of it into evidence. Although neither document was formally admitted into evidence, portions of the contents of both defense exhibits were presented to the jury, that is, they were "introduced" into evidence. Presenting the documents' contents to the jury was "the equivalent of a formal tender of evidence divesting [Aldridge] of the right to open and close final arguments." See *Kennebrew v. State*, 267 Ga. 400, 403-404 (4) (480 SE2d 1) (1996); *Warnock v. State*, 195 Ga. App. 537 (2) (394 SE2d 382) (1990). As the Supreme Court recently explained, it does not matter that the evidence was not formally tendered or was presented on cross-examination or for impeachment purposes because "[u]nder OCGA

§ 17-8-71, courts must inquire whether evidence other than the oral testimony of a criminal defendant is 'introduced,' not the purpose for which the evidence was offered." *Kennebrew v. State*, 267 Ga. at 404 (4), fn. 2. The Supreme Court's holding was meant to prevent a defendant from circumventing OCGA § 17-8-71 by presenting evidence in informal or unorthodox ways and then attempting to retain the right to open and close final arguments simply by failing to make a formal motion for the introduction of the evidence. Id. at 404 (4). "[A] defendant cannot be permitted to present evidence to the jury which should otherwise be formally offered." Id.

7. Aldridge contends the trial court erred in refusing to give his requested charge on "mere spatial proximity" to contraband. After completing its final jury charge, the trial court inquired if Aldridge had any exceptions to the charge. Aldridge noted his objection to a charge defining actual and constructive possession and then said "that's the only exception I have about the possession charge." After briefly discussing a portion of the charge pertaining to the DUI offense, Aldridge stated: "I have no other objections." Consequently, any issue with respect to the request to charge on proximity was waived when Aldridge failed to object on this basis after the court asked for exceptions following the charge. *Johnson v. State*, 229 Ga. App. 586, 587 (2) (494 SE2d 382) (1997).

8. Finally, Aldridge complains that the court's jury instruction defining joint or shared possession was misleading because it may have prompted the jury to believe they could convict Aldridge if they found he and Cox shared possession of the contraband. We do not agree.

In this case, the court twice charged the jury that they could only convict Aldridge if they found he was in sole, actual possession of the contraband. The jury instruction, taken from the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 136, simply explained what sole possession meant by contrasting it with the definition of joint possession. While under the circumstances of this case it may have been the better practice to adjust the charge by omitting the definition of joint possession, "[w]here a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence." (Citations and punctuation omitted.) *Callaway v. State*, 230 Ga. App. 369, 370 (2) (496 SE2d 349) (1998). Consequently, we find no error.

*Judgment affirmed. Beasley, P. J., and Ruffin, J., concur.*

## On Motion for Reconsideration.

On motion for reconsideration, Aldridge contends that Division 6 of our opinion cannot be reconciled with our recent decisions in *Whitehead v. State*, 232 Ga. App. 140, 141 (2) (499 SE2d 922) (1998) and *Davis v. State*, 235 Ga. App. 256, 257 (510 SE2d 537) (1998). Citing *Whitehead*, Aldridge contends he had Deputies Hayes and Allegoode read paragraphs from their police reports into evidence simply to lay the required evidentiary foundation pursuant to OCGA § 24-9-83 for impeaching the deputies with their prior inconsistent statements. Citing *Davis*, Aldridge argues that the information read into evidence was only "foundational" and therefore did not cause him to lose the right to open and conclude closing argument. We do not agree.

Before a witness may be impeached with a prior inconsistent statement, the statement must be "called to his mind with as much certainty as possible." OCGA § 24-9-83. The purpose behind what at common law was known as "Queen Caroline's Rule" is to allow the witness an opportunity to admit, explain, or deny the inconsistency before testimonial or documentary proof is offered regarding the statement. *Horne v. State*, 204 Ga. App. 81 (418 SE2d 441) (1992); *Queen Caroline's Case*, 2 Brod. & Bing. 284, 313 (1820). To satisfy the foundational requirement for impeaching a witness with a prior, written statement, the cross-examiner must show or read the witness his inconsistent statement and ask him if he recalls making it. OCGA § 24-9-83; *Daniels v. State*, 203 Ga. App. 873, 874 (1) (418 SE2d 137) (1992). "[T]he statute does not require that the prior inconsistent statement be admitted into evidence before it is used for impeachment purposes." *Duckworth v. State*, 268 Ga. 566, 568 (2) (492 SE2d 201) (1997); *Whitehead v. State*, 232 Ga. App. at 141 (2). Of course, if the written statement is admissible, the defendant may choose to introduce it into evidence and then cross-examine the witness on its contents. See *Eppinger v. State*, 231 Ga. App. 614 (1) (500 SE2d 383) (1998). However, a defendant does so at his own peril because by impeaching a witness in this manner, he introduces evidence and loses the right to open and conclude final arguments under OCGA § 17-8-71. Id.; *Kennebrew v. State*, 267 Ga. 400, 404 (4) (480 SE2d 1) (1996). See also *Warnock v. State*, 195 Ga. App. 537, 538-539 (2) (394 SE2d 382) (1990).

In *Davis v. State*, 235 Ga. App. at 257, we held that defense counsel's reading a prior inconsistent statement to a witness before questioning him about it was simply "foundational" and did not constitute the introduction of evidence because this procedure comported with that set forth in OCGA § 24-9-83. In the instant case, however, defense counsel went beyond "mere cross-examination" and did more

than recall a contradiction to the deputies by reading their prior inconsistent statements to them. Instead, counsel had each deputy read into evidence paragraphs taken from police reports that had been marked and handled before the jury as defense exhibits. Further, those paragraphs contained information addressing matters other than the challenged contradictory statements. Thus, testimony contained in the police report was presented to the jury just as any other item of evidence. Applying the Supreme Court's analysis in *Kennebrew v. State*, 267 Ga. at 404 (4), presenting a document's contents in this manner was the equivalent of a formal tender or "introduction of evidence" for purposes of OCGA § 17-8-71. By introducing evidence, Aldridge lost the right to open and conclude final closing argument. Id. Accordingly, we deny Aldridge's motion for reconsideration.

DECIDED FEBRUARY 2, 1999 —
RECONSIDERATION DENIED MARCH 24, 1999 — 

*Vansant, Corriere & McClure, John M. Vansant, Jr., Michael W. Strahan*, for appellant.

*J. Brown Moseley, District Attorney, Victoria Spear-Darrisaw, Assistant District Attorney*, for appellee.