## S00A1184. SMITH v. THE STATE.
### (536 SE2d 514)

SEARS, Justice.

The appellant, Broderick Smith, was convicted and sentenced for the offenses of felony murder, voluntary manslaughter, and the possession of a firearm during the commission of a crime stemming from the shooting death of John Winters.[1] On appeal, Smith contends, among other things, that the trial court denied him his right to be present at all critical stages of the trial; that the trial court erred in having him handcuffed before the verdict was announced; and that the trial court should not have sentenced him for both the felony murder and voluntary manslaughter convictions. Because there is only one victim in this case, and because OCGA § 16-1-7 (a) prohibits multiple convictions for one crime, we agree that the trial court should not have sentenced Smith on both the felony murder and vol-

---

[1] The crimes occurred on February 5, 1998, and Smith was indicted on April 24, 1998. Following a jury trial, Smith was found guilty on June 23, 1999, of voluntary manslaughter, felony murder (with armed robbery as the underlying felony), armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. On July 14, 1999, the trial court merged the armed robbery and aggravated assault convictions with the felony murder and voluntary manslaughter convictions, respectively. The court sentenced Smith to life in prison for felony murder, to twenty years in prison for voluntary manslaughter, and to five years in prison for the possession offense, to run consecutively to the sentences for felony murder and voluntary manslaughter. On July 15, 1999, Smith filed a motion for new trial. On September 1, 1999, the court reporter certified the trial transcript, and on November 15, 1999, the trial court denied Smith's motion for new trial. Smith filed a notice of appeal on November 30, 1999, and the appeal was docketed in this Court on April 4, 2000. The appeal was submitted for decision on briefs on May 29, 2000.

untary manslaughter convictions. Accordingly, we vacate the conviction and sentence for voluntary manslaughter. We conclude, however, that Smith's remaining enumerations of error are without merit. We therefore affirm the trial court's judgment in part and vacate it in part.

1. The evidence would have authorized the jury to find that Winters was killed during a fight with Smith at the intersection of Hill Street and Memorial Drive in Atlanta. According to several bystanders who witnessed the fight, Smith and Winters started fighting in a car that was stopped in the middle of the intersection. The vehicle then pulled into a nearby Amoco gas station. Smith and Winters continued to fight inside the car, but the passenger door opened, and Smith and Winters fell out of the car. Several witnesses testified that after Winters stopped fighting, Smith stood over him and shot him in the head. According to the witnesses, Smith then took a brown paper bag from one of the victim's pockets and ran from the scene. A police officer arrived at the crime scene almost immediately after the shooting, and saw Smith running from the scene. The officer chased Smith on foot and caught him. The officer testified that Smith had a brown paper bag with cash on him, and that he (the officer) found a pistol on the ground near where he caught Smith. The pistol was determined to be the weapon that fired the shot that killed the victim.

Contrary to Smith's contention, we conclude that the evidence is sufficient to support the convictions.[2]

2. Smith contends that the trial court denied him his right to be present at all critical stages of the trial when answering a question from the jury.

In this regard, the record contains a document that has a handwritten question that asks, "How do we fill out the jury verdict form for a 'guilty of voluntary manslaughter' on Count One?"[3] Immediately after the question is a signature, which cannot be read, and the date of June 23, 1999, which is the date the jury began deliberating. Just below the signature and date on the document is a handwritten response, stating that "[as] to Count One, simply indicate whether your verdict is guilty, not guilty, or guilty of voluntary manslaughter." The transcript does not contain any discussion of such a question and answer during the jury's deliberations. Moreover, Smith states that he first discovered that this document was in the record when he was preparing his brief for appeal. Smith therefore did not raise any issue concerning the document in his motion for new trial or at the hearing on the motion for new trial. For this reason, there is

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] Count 1 was the malice murder count of the indictment, and the trial court charged the jury that on that count, it could consider the offense of voluntary manslaughter.

no evidence in the record regarding who wrote the question on the document or regarding who provided the answer. Smith contends, however, that the document shows that the jury asked the question and that the trial court provided the answer, and that the exchange of this question and answer occurred outside of his presence. Assuming that Smith has adequately demonstrated that this exchange occurred between the trial court and the jury, and assuming that Smith is not procedurally barred from raising the issue,[4] we conclude that Smith is not entitled to a new trial.

We have held that when a trial court improperly communicates with the jury outside the defendant's presence, the error can be harmless if the communication did not materially affect the outcome of the case[5] or if it did not prejudice the defendant by, for example, hastening a verdict against him or inducing jurors who might be inclined favorably toward the accused to yield their convictions.[6] In the present case, the jurors simply asked the trial court how to record a verdict that they had already reached (voluntary manslaughter instead of malice murder on Count 1 of the indictment), and the trial court, in a written note, merely informed them how to do so. Because the jury's written note to the trial court indicates that it had already reached a verdict, and because the trial court's written response merely told them how to record it, we conclude that there is no reasonable probability that the trial court's note prejudiced Smith.

Accordingly, we conclude that this enumeration of error is without merit.

3. Smith next contends that the trial court erred in ruling that defense counsel had forfeited his right to open and close final arguments by presenting evidence. For the following reasons, we disagree with Smith's contention.

The record shows that, in an attempt to impeach one of the witnesses to the crime, defense counsel handed the witness a statement the witness had given to the police shortly after the crime occurred. Defense counsel stated that it was "Defendant's Exhibit 1," and as defense counsel asked the witness to look at one of the sentences in the statement, the prosecutor objected, asserting that the statement needed to be admitted into evidence. Defense counsel then volunteered that he would introduce the statement for purposes of cross-examination, but not for the purpose of introducing evidence.

---

[4] In this regard, the court reporter certified the trial transcript, including the exhibits, on September 1, 1999, and the hearing on Smith's motion for new trial was not held until November 8, 1999.

[5] *Turpin v. Todd*, 271 Ga. 386, 391 (519 SE2d 678) (1999).

[6] *Burtts v. State*, 269 Ga. 402, 403-404 (499 SE2d 326) (1998); *Waldrip v. State*, 266 Ga. 874, 878-879 (471 SE2d 857) (1996); *Logan v. State*, 266 Ga. 566, 567-568 (468 SE2d 755) (1996).

Defense counsel then read two sentences from the statement in an attempt to impeach the witness.

On cross-examination of another State's witness, defense counsel again attempted to impeach the witness with a prior statement that the witness had given to the police shortly after the crime. Defense counsel stated that he was marking the statement as "D-2," and the prosecutor asked whether defense counsel was "introducing that statement." Defense counsel stated that he was introducing it "for purposes of cross-examination, your honor, so that it may be part of the record." Defense counsel then proceeded to ask the witness about two sentences in the prior statement.

As previously noted, the trial court ruled that by the foregoing action, the defense had introduced evidence and had therefore lost the right to open and close final arguments. We conclude that the trial court did not err in this ruling.

In *Kennebrew v. State*,[7] the defendant attempted to impeach a witness by playing for the jury the entire tape-recorded statement that the witness had given to the police before trial. The trial court held that Kennebrew had forfeited his right to open and close final arguments, and on appeal, we affirmed. We held that "[a]lthough the tape itself was not *formally* tendered by Kennebrew, the presentation of the tape's recorded contents to the jury was the equivalent of a formal tender of evidence, divesting Kennebrew of the right to open and close final arguments."[8] We concluded that "under the guise of cross-examination, a defendant cannot be permitted to present evidence to the jury which should otherwise be formally offered."[9]

Shortly after *Kennebrew*, this Court decided the case of *Duckworth v. State*.[10] There, the issue was whether a defendant has to place a prior written inconsistent statement of a witness into evidence as a prerequisite to impeaching the witness with the prior statement during cross-examination.[11] We held that the defendant did not have to place the written statement into evidence, but merely had to show the statement to the witness or read the relevant parts to the witness before using it for impeachment.[12]

Thus, under the rationale of *Duckworth*, a defendant who reads from a prior written inconsistent statement of a witness in order to impeach that witness is not, under the guise of cross-examination,[13] presenting evidence to the jury that would otherwise have to be for-

---

[7] 267 Ga. 400, 403-404 (480 SE2d 1) (1996).
[8] Id. at 403-404.
[9] Id. at 404.
[10] 268 Ga. 566 (492 SE2d 201) (1997).
[11] Id. at 567-569.
[12] Id. at 567-568.
[13] *Kennebrew*, 268 Ga. at 404.

mally offered. Accordingly, it would appear that a defendant who cross-examines a witness by reading from the witness's prior inconsistent statement is not introducing evidence within the meaning of our decision in *Kennebrew* and would not lose the right to open and close final arguments. The Court of Appeals has so held in several cases.[14] The Court of Appeals, however, has also concluded that if a defense attorney reads extensively from a prior inconsistent statement and addresses matters other than the prior contradictory matters, the defendant, as in *Kennebrew*, has effectively introduced evidence during the cross-examination and thus loses the right to open and close final arguments.[15] Finally, the Court of Appeals has also held that if a defendant introduces a written statement during cross-examination and makes it a part of the record, the defendant has introduced evidence and loses the right to open and conclude final argument.[16]

From the foregoing cases, we conclude that the following standards can be applied to determine whether a defendant has lost the right to open and close: (1) If, under the guise of cross-examination, a defendant reads from the portions of a prior written statement of a witness that are not related to impeaching the witness, the defendant has effectively introduced evidence to the jury that should have been formally offered into evidence and the defendant therefore loses the right to open and close final arguments; (2) if a defendant reads only the portions of the prior written statement of a witness that are relevant to impeaching the witness, the defendant has not introduced evidence and does not lose the right to open and close; and (3) if a defendant, in impeaching a witness with a prior inconsistent statement, voluntarily introduces the statement into evidence in order to make it a part of the record, the defendant has introduced evidence and has lost the right to open and close final arguments.

In the present case, although defense counsel did not read extensively from the written statements and focused only on contradictory material, defense counsel, at least with regard to the second statement, did voluntarily introduce the written statement into evidence in order to make it a part of the record. Having done so, we must conclude that Smith introduced evidence at trial, and that the trial court therefore correctly ruled that Smith lost the right to open and close final arguments.

4. Based upon evidence that was introduced at the hearing on Smith's motion for new trial, it appears that, without any warning or

---

[14] *Davis v. State*, 235 Ga. App. 256, 257-258 (510 SE2d 537) (1998); *Whitehead v. State*, 232 Ga. App. 140, 141-142 (499 SE2d 922) (1998).

[15] *Aldridge v. State*, 237 Ga. App. 209, 214-215, 216 (515 SE2d 397) (1999).

[16] *Warnock v. State*, 195 Ga. App. 537, 538-539 (394 SE2d 382) (1990).

prior hearing and without any evidence that Smith was a danger to himself or to anyone in the courtroom, the bailiff handcuffed Smith as the jury's verdict was being announced. At the motion for new trial hearing, the bailiff testified that this is a standard practice of his to insure courtroom safety. On appeal, Smith contends that this procedure was prejudicial to him, and that the trial court erred in not granting him a new trial based upon it. Although we disapprove of the bailiff's unilateral decision to handcuff Smith in front of the jury, we conclude that Smith is procedurally barred from raising this issue on appeal, as he made no objection to the procedure at trial.[17]

5. Smith contends that the trial court erred in excusing a prospective juror for cause. Because the prospective juror indicated that he might not be fair and impartial in deciding this case, and because "[a] conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province,"[18] we conclude that the trial court did not abuse its discretion in excusing the juror for cause.[19]

6. Smith raises several contentions concerning his convictions and sentences for voluntary manslaughter and felony murder.

(a) First, Smith contends that, under the rationale of *Edge v. State*,[20] his conviction for felony murder must be set aside, and he must therefore be sentenced only on the voluntary manslaughter conviction. We disagree. In *Edge,* this court adopted a modified merger rule, holding that, when a single aggravated assault is the basis for felony murder and voluntary manslaughter charges, the defendant cannot be convicted and sentenced for felony murder if the jury also finds that the assault is mitigated by provocation and passion and convicts the defendant of voluntary manslaughter.[21] We adopted such a rule because "[t]o hold otherwise would eliminate voluntary manslaughter as a separate form of homicide since, in that event, every voluntary manslaughter would also be a felony murder."[22] In *Edge,* we noted that the problem we were addressing "does not exist if the underlying felony is independent of the killing itself, such as burglary, robbery, or even an assault that is directed against someone other than the homicide victim."[23] On a number of occasions since deciding *Edge,* we have reiterated that the modified merger rule does not apply when the underlying felony, such as armed rob-

---

[17] *Hood v. State*, 266 Ga. 662, 663 (470 SE2d 235) (1996).
[18] *Holmes v. State*, 269 Ga. 124, 126 (498 SE2d 732) (1998).
[19] See *Fleming v. State*, 269 Ga. 245, 248 (497 SE2d 211) (1998); *Perry v. State*, 264 Ga. 524 (2) (448 SE2d 444) (1994).
[20] 261 Ga. 865 (414 SE2d 463) (1992).
[21] *Edge,* 261 Ga. at 866-868; *Sims v. State*, 265 Ga. 35, 36 (3) (453 SE2d 33) (1995).
[22] *Edge,* 261 Ga. at 866.
[23] *Edge,* 261 Ga. at 867, n. 3.

bery, is independent of the killing itself,[24] but that instead it only applies "where the aggravated assault is perpetrated against the homicide victim and is an integral part of the killing."[25]

In the present case, because the underlying felony of armed robbery is independent of the killing itself, this Court's ruling in *Edge* is inapplicable.

(b) In a similar vein, Smith contends that the verdicts of voluntary manslaughter and felony murder are mutually exclusive. Again, we disagree. In this State, if a jury returns verdicts of guilty on two counts of an indictment, and those counts are mutually exclusive, the convictions must be set aside and a new trial granted.[26] In *Dumas*, the defendant was convicted of malice murder and vehicular homicide. We held that the verdicts were mutually exclusive, in that malice murder required a finding that the defendant acted with malice in causing the death of the victim, whereas vehicular homicide required a finding that the defendant killed "another while operating a car, 'without malice aforethought' and 'without an intention to do so.'"[27]

In the present case, we conclude that the verdicts are not mutually exclusive. First, the crime of voluntary manslaughter requires a finding by the jury that Smith intended to kill the victim, but that he did so based upon the provocation and passion required under OCGA § 16-5-2. On the other hand, to find that Smith committed the offense of felony murder, based upon the underlying felony of armed robbery, the jury had to find that Smith intended to take property from the victim, that he accomplished the taking of property through the use of force and with an offensive weapon,[28] and that during the commission of that armed robbery, Smith caused the death of the victim.[29] Significantly, to convict Smith of felony murder, the jury did not have to find that Smith did not act with an intent to kill, as malice and

---

[24] *Matthews v. State*, 268 Ga. 798, 804 (493 SE2d 136) (1997); *Sims*, 265 Ga. at 36; *Foster v. State*, 264 Ga. 369, 370 (444 SE2d 296) (1994).

[25] *Foster*, 264 Ga. at 370.

[26] *Dumas v. State*, 266 Ga. 797, 798-800 (471 SE2d 508) (1996).

[27] Id. at 800 (quoting OCGA § 40-6-393 (a), (b)).

[28] *Francis v. State*, 266 Ga. 69, 70-71 (463 SE2d 859) (1995). In this regard, if the evidence shows that the theft occurred after force was used against the victim, a conviction of armed robbery is authorized even if the defendant's intent to take the victim's property arose after the killing. Id.; *Davis v. State*, 255 Ga. 588, 593 (3) (b) (340 SE2d 862) (1986); *Rogers v. State*, 234 Ga. App. 507, 508-509 (507 SE2d 25) (1998).

[29] OCGA § 16-5-1 (c). We note that the evidence supports the inference that the intent to commit the theft, as well as the actual theft, occurred after Smith killed the victim. The evidence therefore supported the giving of the charge of voluntary manslaughter. If, on the other hand, the evidence showed only that the altercation between Smith and the victim was the result of the victim's defense to the robbery, Smith would not have been entitled to a charge on voluntary manslaughter. See *Turpin v. Christenson*, 269 Ga. 226, 234, n. 6 (497 SE2d 216) (1998).

intent to kill are not elements of the offense of felony murder.[30] Because the intent relevant to the conviction for felony murder was the underlying intent for armed robbery and because intent to kill, as well as mitigating factors such as provocation and passion, are irrelevant to that intent, the jury's verdict of felony murder does not constitute a finding that Smith did not act with provocation and passion in assaulting the victim and does not conflict with the jury's verdict of voluntary manslaughter. For these reasons, we conclude that the verdicts of voluntary manslaughter and felony murder are not mutually exclusive under the facts of this case.

(c) Smith further contends that the trial court should have merged his conviction for voluntary manslaughter with his conviction for felony murder, and should have sentenced him only on the felony murder offense. We agree. Because there is only one victim, to convict and sentence Smith for both voluntary manslaughter and felony murder would improperly subject Smith to multiple convictions and punishments for one crime.[31] Accordingly, we vacate Smith's conviction and sentence for voluntary manslaughter.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Hunstein and Carley, JJ., who concur in Divisions 1, 2, 3, 5, 6, and the judgment.*

DECIDED OCTOBER 10, 2000.

*J. Robert Joiner,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General,* for appellee.

---

[30] See *Knight v. State*, 271 Ga. 557, 559 (521 SE2d 819) (1999).

[31] OCGA § 16-1-7 (a); *Diamond v. State*, 267 Ga. 249, 251 (477 SE2d 562) (1996); *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993).