**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 29, 2024**

# In the Court of Appeals of Georgia

A24A0968. SANDLER v. COGER.

MILLER, Presiding Judge.

Following the trial in this negligence case, the trial court entered judgment in favor of the plaintiff pursuant to the jury's verdict. The defendant appeals, arguing that the court erred in refusing to allow her to open and close final arguments and in instructing the jury on causation and damages. We disagree and therefore affirm the court's judgment.

"Following a jury trial, we view the evidence in the light most favorable to the verdict." (Citation omitted.) *Fassnacht v. Moler*, 358 Ga. App. 463 (855 SE2d 692) (2021). So viewed, the evidence at trial showed that on May 10, 2016, James Coger was stopped in his vehicle at an intersection when Mary Elizabeth Sandler drove into

the back of his vehicle. Coger described how the impact caused his body to jerk forward and was "like hitting a wall that you didn't know was there." Indeed, the impact caused the tow bar of Coger's vehicle to lodge into Sandler's vehicle. Coger had previously been in an automobile crash in 2009 that caused injuries and pain in his neck and back, including a herniated disc, but he had recovered from such injuries and pain by the time of the 2016 crash.

Coger felt neck and back pain immediately after the 2016 crash and obtained medical treatment the next day. An MRI scan showed that Coger had disc herniations in different parts of the spine than the 2009 herniated disc, as well as disc tear or fissure that was not present after the 2009 crash. Coger obtained additional medical treatment in June, July, and August 2016, when he reported neck and back pain and radiating pain to his legs and was diagnosed with a pinched nerve. Coger received chiropractic treatment and epidural steroid injections, and he was prescribed a back brace as well as anti-inflammatory and muscle relaxant medications. Coger reported significant relief following this medical treatment and was discharged from the Accident Injury Centers of Atlanta's ("AICA") care, but his pain returned several months later, and he required additional medical treatment over the following years.

Coger filed this negligence action against Sandler, seeking to recover for injuries he sustained in the 2016 crash.[1] At trial, Sandler stipulated that her negligence caused the crash but argued that the crash did not cause Coger's injuries.

During his presentation of evidence, Coger played the videotaped deposition of Dr. Francis Acquah, who treated him at AICA in the months after the 2016 crash. Dr. Acquah testified on direct examination that the 2016 crash caused the injuries and pain Coger suffered after the crash, consisting of both new injuries and an aggravation of his pre-existing condition. Dr. Acquah also testified that the care and treatment Coger received at AICA was reasonably necessary as a result of the injuries he sustained in the 2016 crash.

On cross-examination, Dr. Acquah agreed with Sandler's counsel that frequently sitting for long periods can cause back pain. Sandler's counsel then asked, "on AICA's own blog it states, quote, in fact, most back pain is caused by frequently sitting for long periods, correct?" Counsel was referring to a printout of a blog post from AICA's website, which was identified as Defendant's Exhibit 2 and attached to Dr. Acquah's deposition. Dr. Acquah responded that the blog post was meant to be

---

[1] Sandler died during the litigation, and the temporary administrator of her estate was substituted in her place as a party.

background information for AICA's patients and was not a medical opinion that all back pain is caused by sitting for long periods. Counsel then again asked whether AICA's blog post "states that most back pain is caused by frequently sitting for long periods, correct?" Dr. Acquah stated that the blog post was irrelevant, and counsel responded that AICA "has represented that the stress that gets applied to your neck and back muscles when sitting at a desk gradually builds over time and causes chronic pain." Counsel further stated that the blog post was relevant because Coger worked a desk job.

Coger testified that he still suffered pain and needed medical treatment as a result of the 2016 crash. Coger's medical bills from his treatment after the crash, which totaled approximately $60,000, were admitted into evidence. One of Coger's treating physicians testified that the treatment she rendered to Coger after the crash was necessary due to aggravation of injuries caused by the crash.

Sandler did not call any witnesses or formally present any evidence to the jury at trial. However, the trial court ruled that Coger had the right to open and close final arguments under OCGA § 9-10-186 because Sandler presented evidence by quoting the AICA blog post to Dr. Acquah.

4

The trial court instructed the jury that it "may conclude that a causal connection exists between a crash and an injury in light of the short lapse between the crash, the onset of symptoms and receipt of medical treatment. Whether you draw such a conclusion is a matter solely for you, the jury, to decide." The court also instructed the jury that

> necessary expenses, resulting from the injury, are a legitimate item of damages. As to medical expenses, such as hospital, doctor and medicine bills, the amount of the damage would be the reasonable value of such expenses, as was reasonably necessary. [Coger] may identify his bills incurred for his medical treatment and such do not have to be identified by the medical provider who submitted the bill, and it shall not be necessary for an expert witness to testify that the charges were reasonable and necessary. But, this does not prevent [Sandler] from disputing whether or not the charges, as introduced, were, in fact, reasonably and necessary. Whether or not [Coger's] medical charges were reasonable and necessary are solely for you, the jury, to decide.

The jury returned a verdict in favor of Coger in the amount of $451,167.67, and the trial court entered judgment pursuant to the verdict. Sandler then filed this appeal.

1. First, Sandler argues that the trial court erred in refusing to allow her to open and close final arguments under OCGA § 9-10-186 because she did not introduce any evidence at trial. Sandler asserts that her counsel simply referenced the content of the

5

AICA blog post in order to impeach Dr. Acquah's credibility regarding his causation opinion, that counsel did not enter the post into evidence for the jury to see, and that Dr. Acquah did not read from the post. We disagree and conclude that by reading from the blog post, Sandler introduced evidence and thereby lost her right to open and close final arguments.

OCGA § 9-10-186 provides in pertinent part that "[i]n civil actions, where the burden of proof rests with the plaintiff, the plaintiff is entitled to the opening and concluding arguments except that if the defendant introduces no evidence or admits a prima-facie case, the defendant shall be entitled to open and conclude." "In civil cases, it is reversible error to deny a defendant its right to open and conclude closing argument if he or she introduces no evidence in response to the plaintiff's case, unless the evidence demands a verdict." *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 465 (5) (590 SE2d 807) (2003).

There is scant case law interpreting when a defendant is considered to have introduced evidence under OCGA § 9-10-186.[2] However, former OCGA § 17-8-71

---

[2] In *Petrenko v. Moseri*, 333 Ga. App. 14, 17 (1) (775 SE2d 272) (2015) (physical precedent only), this Court concluded that a defendant did not lose the right to open and close final arguments under the statute, where the defendant merely showed a witness an exhibit and the witness "did not read from [the exhibit] or disclose its

6

provided that in criminal cases the defendant was entitled to open and close final arguments if he "introduce[d] no evidence." See *Rolland v. State*, 280 Ga. 517, 518 n.5 (2) (a) (630 SE2d 386) (2006).[3] Unlike OCGA § 9-10-186, there is substantial case law interpreting when a defendant is considered to have introduced evidence under former OCGA § 17-8-71, and given the identical language and subject matter between the two statutes, we find those cases persuasive in our interpretation of OCGA § 9-10-186. A review of that case law indicates that Sandler introduced evidence and lost the right to open and close final arguments here.

The Georgia Supreme Court developed the following standards for determining whether a defendant introduced evidence and lost the right to open and close final arguments under former OCGA § 17-8-71:

> (1) If, under the guise of cross-examination, a defendant reads from the portions of a prior written statement of a witness that are not related to impeaching the witness, the defendant has effectively introduced

---

contents other than to admit that his assistant had documented a telephone call from plaintiff's counsel regarding questions about the medical narrative he had prepared." Of course, Sandler's counsel did much more than merely show the AICA blog post to Dr. Acquah, as counsel read from the post verbatim and recounted the substance of it.

[3] After a 2005 amendment, a defendant no longer has this right. Id.

evidence to the jury that should have been formally offered into evidence and the defendant therefore loses the right to open and close final arguments; (2) if a defendant reads only the portions of the prior written statement of a witness that are relevant to impeaching the witness, the defendant has not introduced evidence and does not lose the right to open and close; and (3) if a defendant, in impeaching a witness with a prior inconsistent statement, voluntarily introduces the statement into evidence in order to make it a part of the record, the defendant has introduced evidence and has lost the right to open and close final arguments.

*Smith v. State*, 272 Ga. 874, 878 (3) (536 SE2d 514) (2000). Thus, in *Lane v. State*, 274 Ga. 751, 752-753 (559 SE2d 455) (2002), the Supreme Court held that the defendant did not introduce evidence by having a witness read a question and answer from his prior testimony, where the defendant was merely attempting to impeach the witness's recollection and credibility by showing a discrepancy between his prior testimony and his trial testimony. And in *Davis v. State*, 235 Ga. App. 256, 257-258 (510 SE2d 537) (1998), this Court held that defense counsel's reading a prior inconsistent statement to a witness before questioning him about it was simply foundational to impeachment and did not constitute the introduction of evidence.

In *Kennebrew v. State*, 267 Ga. 400, 403 (4) (480 SE2d 1) (1996), the Georgia Supreme Court held that a defendant who attempted to impeach a witness by playing the witness's tape-recorded statement introduced evidence under former OCGA § 17-8-71. The Supreme Court explained that while the defendant did not formally tender the tape into evidence, "the presentation of the tape's recorded contents to the jury was the equivalent of a formal tender of evidence divesting [the defendant] of the right to open and close final arguments." Id. at 403-404 (4). The Supreme Court stated that a defendant may not

> present[] evidence to the jury and retain[] the right to open and close final arguments simply by failing or refusing to make a formal motion for the introduction of such evidence. . . . Whether through a defendant's own statement or under the guise of cross-examination, a defendant cannot be permitted to present evidence to the jury which should otherwise be formally offered.

(Citation omitted.) Id. at 404 (4); see also *Aldridge v. State*, 237 Ga. App. 209, 215 (6) (515 SE2d 397) (1999) ("The Supreme Court's holding [in *Kennebrew*] was meant to prevent a defendant from circumventing [former] OCGA § 17-8-71 by presenting evidence in informal or unorthodox ways and then attempting to retain the right to open and close final arguments simply by failing to make a formal motion for the

9

introduction of the evidence."). Similarly, in *Aldridge*, supra, 237 Ga. App. at 214-215 (6), this Court held that a defendant lost the right to open and close final arguments by having witnesses read highlighted portions of their prior statements.

Here, Sandler did not simply reference material that was foundational for impeachment of Dr. Acquah but instead introduced substantive evidence in an attempt to support her own theory of causation. See *McFarlin v. State*, 259 Ga. App. 838, 840 (2) & n.2 (578 SE2d 546) (2003) (trial court did not err in refusing to allow the defendants to open and close final arguments, where they had a physician read portions of medical reports on the victim into evidence, not to impeach the physician but to present evidence regarding the victim's condition at the time of the incident). Significantly, there was no indication that the statements in the AICA blog post were made by Dr. Acquah himself. And while Dr. Acquah had testified that he believed the 2016 crash was the cause of Coger's injuries, he had just conceded that prolonged periods of sitting may cause back pain before Sandler's counsel began quoting the blog post. See *Thompson v. State*, 265 Ga. App. 696, 697-698 (1) (595 SE2d 377) (2004) (introduction of evidence waived the defendant's right to present the final closing argument, where defense counsel used a witness's prior statement "for more than

mere impeachment," specifically, to introduce substantive evidence about what was not included in the statement); *Aldridge*, supra, 237 Ga. App. at 216-217 (counsel's action of having witnesses read their prior statements was not merely the foundation for impeachment, because counsel did more than recall a contradiction to the witnesses, and the statements contained information addressing matters other than the challenged contradictory statements).

The fact that the information in the AICA blog post may have cast doubt on Dr. Acquah's causation opinion does not mean that Sandler's counsel was laying a proper foundation for impeachment by quoting the post. Unlike the defendants in *Lane*, supra, 274 Ga. at 752-753, and *Davis*, supra, 235 Ga. App. at 257-258, counsel did not highlight a discrepancy between any prior statement of Dr. Acquah and his trial testimony. Further, the fact that counsel and not Dr. Acquah read from the blog post and the fact that the post was not formally entered into evidence are not controlling, because Dr. Acquah implicitly confirmed the content of the post, and counsel's actions in reading verbatim from the post and recounting the substance thereof constituted the equivalent of a formal tender of evidence. See *Kennebrew*, supra, 267 Ga. at 403-404 (4); *Aldridge*, supra, 237 Ga. App. at 214 (6). Accordingly,

11

the trial court did not err in refusing to allow Sandler to open and close final arguments.

2. Next, Sandler argues that the trial court erred in instructing the jury that it could find a causal connection between a crash and an injury based upon a short lapse of time between the crash, the onset of symptoms, and the receipt of medical treatment. Sandler asserts that this instruction was not tailored to the evidence because Coger did not report an injury at the accident scene, and he incurred the majority of his medical bills after he felt "much better." We disagree and conclude that the challenged instruction was not misleading.

"We review *de novo* an allegedly erroneous jury instruction, which is a legal question." (Citation and punctuation omitted.) *White v. Stanley*, 369 Ga. App. 330, 331 (893 SE2d 466) (2023). "And in assessing the assertion of an erroneous jury instruction, the instruction must be evaluated in the context of the trial court's jury instructions as a whole. Indeed, the only requirement regarding jury charges is that they were, as given, correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." (Citations and punctuation omitted.) Id. at 331-332. "[A] jury charge must be adjusted to the evidence, apt, and a correct statement of the

applicable law." (Citation and emphasis omitted.) *Boston Men's Health Center, Inc. v. Howard*, 311 Ga. App. 217, 221 (1) (715 SE2d 704) (2011).

In *Hutcheson v. Daniels*, 224 Ga. App. 560, 561 (1) (481 SE2d 567) (1997), this Court held that "a lay jury could conclude from common knowledge that a causal connection existed in light of the short lapse between [the plaintiff's] accident and his onset of symptoms and receipt of medical treatment." And in *Safeway Ins. Co. v. Hanks*, 323 Ga. App. 728, 730 (1) (747 SE2d 890) (2013), this Court explained that this rule was especially applicable in cases involving injuries suffered in automobile crashes. Thus, the challenged instruction here was a correct statement of the law.

The challenged instruction was also authorized by the evidence, as Coger reported pain immediately after the 2016 crash and obtained medical treatment the next day. And in considering the instructions as a whole, the trial court explained that (1) whether the jury found a casual connection between a crash and an injury based upon a short lapse of time between the crash, the onset of symptoms, and the receipt of medical treatment was a matter solely for the jury to decide, and (2) Coger bore the burden of proving the elements of his claims by a preponderance of the evidence, including the burden of proving that Sandler's negligence caused his injuries. See

*Jackson v. Rodriquez*, 173 Ga. App. 211, 213 (2) (325 SE2d 857) (1984) (the trial court did not err by charging the jury that physicians are presumed skillful because, although this charge was more favorable to the defendant, the charge was coupled with a more complete charge explaining how the presumption could be overcome by the plaintiff). Therefore, this challenged instruction was not erroneous.

3. Finally, Sandler argues that the trial court erred in instructing the jury that Coger met his burden of proof as to the reasonableness of damages merely by introducing his medical bills. We disagree.

The trial court simply instructed the jury that Coger could identify his medical bills, that such bills did not have to be identified by the medical provider, and that it was not necessary for an expert witness to testify that the charges were reasonable and necessary. This was a correct statement of the law, because a "patient shall be a competent witness to identify bills for expenses incurred in the treatment of the patient upon a showing by [him] that the expenses were incurred in connection with the treatment of the injury . . . involved in the subject of litigation at trial," and "[s]uch items of evidence need not be identified by the one who submits the bill, and

it shall not be necessary for an expert witness to testify that the charges were reasonable and necessary." OCGA § 24-9-921 (a) & (b).

Significantly, the trial court also instructed the jury that (1) Sandler could still dispute whether the medical bills, as introduced, were reasonable and necessary, and (2) whether the bills were reasonable and necessary was solely for the jury to decide. See OCGA § 24-9-921 (b) (providing in pertinent part that "nothing in this Code section shall be construed to limit the right of a thorough and sifting cross-examination as to [medical bills]"); *Jackson*, supra, 173 Ga. App. at 213. The court also instructed the jury that Coger bore the burden of proving the elements of his claims, including his damages, by a preponderance of the evidence. Accordingly, the challenged instruction did not mislead the jury as to Coger's burden of proving the reasonableness of his damages.

In conclusion, because the trial court did not err in refusing to allow Sandler to open and close final arguments or in instructing the jury, we affirm the court's judgment in favor of Coger.

*Judgment affirmed. Markle and Land, JJ., concur.*