## A06A1813. PARKER v. THE STATE.
(642 SE2d 111)

BERNES, Judge.

A Gwinnett County jury found Walter Stephen Parker guilty of two counts of child molestation. On appeal from the denial of his amended motion for new trial, Parker argues that he was denied his constitutional right to a speedy trial; that the trial court erred in admitting certain similar transaction evidence; and that the two child molestation counts should have been charged as one count in the indictment and merged for purposes of sentencing. Finding no error, we affirm.

Viewed in the light most favorable to the jury verdict, the evidence adduced at trial shows that the female victim was best friends with Parker's daughter, J. P. It was not uncommon for the two girls to spend the night at each other's homes or for the two families to get together for dinner, shopping, or other activities. At the time of the alleged molestation, both girls were 13 years old.

J. P. lived with Parker in Gwinnett County, but would periodically visit her mother (Parker's ex-wife) in Texas. On June 11, 1999, J. P. was returning from a visit with her mother. The victim rode with Parker to pick up J. P. at the Atlanta airport. On the way, Parker leaned over the victim and locked the car door, intentionally causing his arm to move across the victim's chest. He then touched the victim's chest both over and under her clothes, and he rubbed her legs. Parker asked the victim if she liked what he was doing, and she

---

*Williams*, 281 Ga. App. 870, 871 (1) (637 SE2d 471) (2006).
[13] See *Augusta Surgical Center*, supra at 287.

said no. Nonetheless, after parking the car at the airport, Parker placed his mouth on the victim's breasts under her clothes.

After picking up J. P. from the airport, Parker drove back home with the two girls. The victim decided to spend the night at the Parker residence and catch up with J. P. Later that night, the victim told J. P. what had happened on her trip to the airport with Parker. However, neither of the girls told anyone else what had happened at that time.

Early the next morning, Parker went into J. P.'s room where the two girls were sleeping. The victim awoke as Parker touched her breasts and vagina both over and under her clothes. Although J. P. did not see what occurred, she woke up and saw Parker as he was leaving the room.

Later that morning, the victim told J. P. what Parker had done to her in the bedroom. The victim, visibly distraught, also told her parents what had occurred, and J. P. called her mother in Texas. The police were contacted, who commenced an investigation and took statements from J. P., the victim, and the victim's parents. During the investigation, J. P. disclosed that in 1998, Parker had repeatedly come into her bedroom at night and did the same things to her that he had done to the victim.

Parker was arrested on June 13, 1999 but subsequently was released on bond. Following his arrest, Parker was indicted on two counts of child molestation. Count 1 alleged that Parker committed child molestation on June 12, 1999 "by touching [the victim's] breast with his hand." Count 2 alleged that Parker committed child molestation on that same date "by touching [the victim's] vagina with his hand." Parker was tried and convicted on both counts in October 2003.

1. At trial, the victim took the stand and described what Parker had done to her on the way to the airport, in the airport parking lot, and in J. P.'s bedroom. The state also presented testimony from J. P., J. P.'s mother, the victim's parents, and the law enforcement officer who interviewed the victim. Although Parker did not raise the general grounds, we conclude that based on the evidence adduced at trial, any rational trier of fact could have found him guilty beyond a reasonable doubt of the two counts of child molestation. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Tyler v. State*, 279 Ga. App. 809, 811 (1) (632 SE2d 716) (2006); *Hines v. State*, 277 Ga. App. 404, 405 (1) (626 SE2d 601) (2006).

2. Approximately four weeks before trial, Parker moved to dismiss the indictment on the ground that his constitutional right to a speedy trial had been violated, given the lengthy delay between the time of his arrest and his trial. After conducting a pre-trial hearing, the trial court found that the length of the delay was unusual, but denied the motion based on its finding that Parker had asserted his

right in an untimely manner and had suffered no prejudice as a result of the delay. On appeal, Parker contends that the trial court abused its discretion in denying his motion. We disagree.

"A speedy trial is guaranteed an accused by the Sixth Amendment to the Constitution of the United States, and also Art. I, Sec. I, Par. XI (a) of the 1983 Ga. Constitution." (Citation and punctuation omitted.) *Roberts v. State*, 279 Ga. App. 434, 436 (631 SE2d 480) (2006). *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972) sets forth the four-part test for determining whether an accused's constitutional speedy trial rights have been violated. Under that test, we must consider

> (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. The factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. Absent an abuse of discretion, we must affirm the trial court's balancing and weighing of the four *Barker* factors.

(Citations, punctuation and footnote omitted.) *Nusser v. State*, 275 Ga. App. 896, 897 (622 SE2d 105) (2005). We will address the four factors each in turn.

(a) *The Length of the Delay*. As to the first *Barker* factor, the record reflects that the delay between Parker's arrest and the date of his trial was approximately four years and four months. "As a general rule, any delay approaching a year raises a threshold presumption of prejudice." (Citations omitted.) *Nusser*, 275 Ga. App. at 897. Hence, the trial court was entitled to treat the delay as creating a rebuttable presumption of prejudice.

(b) *The Reason for the Delay*. Regarding the second *Barker* factor, the transcripts of the calendar calls held in this case reflect that many of the delays were caused by requests for continuances, sometimes made by the state and sometimes made by defense counsel. At the hearing on the motion to dismiss, the state explained that the continuances it sought were due to logistical problems associated with obtaining the attendance of out-of-state witnesses. In other instances, the transcripts reflect that both parties announced ready at the calendar call, but the trial nevertheless was later delayed for reasons not explained in the record. Given the lack of explanation, the delay in these specific instances must be treated as caused by the negligence of the state. See *State v. Yates*, 223 Ga. App. 403, 404 (2) (477 SE2d 670) (1996).

Based on this record, we cannot say that the delay was attributable to a *deliberate* effort by the state to delay the trial in order to

impair the defense. Instead, it appears that the delay was caused in part by the negligence of the state, and in part by the defense. Under these circumstances, the reason for the delay is viewed as "relatively benign" and need not be weighed heavily against the state, although it does constitute a negative factor. *Smith v. State*, 275 Ga. 261, 263 (564 SE2d 441) (2002); *Perry v. Mitchell*, 253 Ga. 593, 594-595 (322 SE2d 273) (1984).

(c) *The Defendant's Assertion of the Right.* As to the third *Barker* factor, the record shows that although he was arrested in 1999, Parker did not assert his constitutional right to a speedy trial until approximately four weeks before trial in 2003. We have emphasized that

> [w]hile the state has a duty to bring the defendant to speedy trial, the defendant has a responsibility to assert that right. Even though a defendant is not procedurally barred from raising a constitutional speedy trial claim at any time up to the point of trial, a defendant's failure to assert his claim in a timely manner can be weighed heavily against him as part of the *Barker* analysis.

(Citations, punctuation and footnote omitted.) *Nusser*, 275 Ga. App. at 898. See also *Snow v. State*, 229 Ga. App. 532, 533-534 (494 SE2d 309) (1997). Given Parker's over four-year delay in asserting his right, the trial court was entitled to weigh this factor heavily against him. See id.

(d) *The Prejudice to the Defendant.* Under the fourth *Barker* factor, courts consider three interests protected by the right to a speedy trial in determining whether the defendant has suffered actual prejudice by the delay, namely, "preventing oppressive pretrial incarceration, minimizing a defendant's anxiety and concern, and limiting the possibility that the defense will be impaired." (Footnote omitted.) *Beasley v. State*, 260 Ga. App. 74, 76 (d) (579 SE2d 19) (2003). "The most important component of the prejudice analysis is whether the defendant's ability to raise a defense was impaired by the delay." (Citation omitted.) *Nusser*, 275 Ga. App. at 900.

Here, there was no risk of oppressive pre-trial incarceration because Parker was released on bond following his arrest. See *Nusser*, 275 Ga. App. at 900. As to the issue of undue anxiety and concern, Parker claims in his appellate brief that he "was hospitalized on two occasion[s] for heart problems and eventually placed on disability due to his heart condition caused, in large part, by the stress of these charges." But, "[f]actual assertions in briefs that are unsupported by the record cannot be considered in the appellate process." (Citation omitted.) *Robinson v. State*, 200 Ga. App. 515, 516

(1) (408 SE2d 820) (1991). Parker points to no evidence in the record to support his claim of undue anxiety and concern, and we have found none. Furthermore, "while the minimization of a defendant's anxiety and concern is a factor to be considered in determining prejudice, the broader concern is actual prejudice to the conduct of the defense." (Punctuation and footnote omitted.) *Watkins v. State*, 267 Ga. App. 684, 687 (d) (600 SE2d 747) (2004).

With respect to that broader concern, Parker argues that his defense was impaired by the delay because the victim and J. P. moved out of state after the alleged molestation incident, which he claims rendered them "unavailable" to him because "they [were] beyond the subpoena power of this State." Contrary to Parker's claim, he could have compelled the appearance of these witnesses under The Uniform Act to Secure the Attendance of Witnesses from Without the State, OCGA §§ 24-10-90 to 24-10-97. Moreover, Parker ignores the obvious fact that both the victim and his daughter testified at trial, and, therefore, were available for cross-examination.

Parker also argues that his defense was impaired because several of the witnesses had faded memories about what had transpired. But, the fact that witnesses' memories may have dimmed is not, standing alone, sufficient to demonstrate that Parker's defense was impaired. See *McKinney v. State*, 250 Ga. App. 22, 24 (549 SE2d 164) (2001). Additionally, we have reviewed the entire trial record and fail to discern any instances where Parker was unable to get material information before the jury as a result of the witnesses' faded memories, given defense counsel's thorough cross-examination of the witnesses and use of their prior statements made to law enforcement shortly after the alleged molestation.

Finally, Parker contends that because many of the witnesses' memories had dimmed, their testimony in several places contradicted their initial statements given to police, and so he "was forced to admit their initial statements into evidence for impeachment thereby foreclosing his right to opening and concluding arguments." It is true that under the former version of OCGA § 17-8-71,[1] the defendant's introduction of prior inconsistent statements into evidence caused the defendant to lose his right to open and conclude closing argument before the jury. See *Smith v. State*, 272 Ga. 874, 878

---

[1] The Code section has since been amended, effective July 1, 2005, and now provides:
After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. The defendant shall be entitled to make a closing argument prior to the concluding argument of the prosecuting attorney.
OCGA § 17-8-71. "The 2005 statute's new second sentence abrogates the venerable rule, dating from 1852, that a defendant who presented no evidence thereby gained the right to open and conclude closing argument." (Footnote omitted.) *Warren v. State*, 281 Ga. App. 490, 491 (2) (636 SE2d 671) (2006).

(3) (536 SE2d 514) (2000). It is likewise true that in other contexts, we have held that the improper loss of the defendant's right to open and conclude closing argument is presumptively prejudicial. See *Jones v. State*, 260 Ga. App. 487, 489 (2) (580 SE2d 278) (2003); *Kelly v. State*, 149 Ga. App. 388 (254 SE2d 737) (1979).

Significantly, however, Parker was not required to introduce into evidence the witnesses' prior inconsistent statements, and thereby forego his right to open and close argument, in order to impeach the witnesses.

> The proper method for impeaching a witness with a prior inconsistent statement is codified in OCGA § 24-9-83. . . . [T]hat statute does not require that the prior inconsistent statement be admitted into evidence before it is used for impeachment purposes. Nor does the case law mandate the introduction of the prior written statement into evidence before questioning the witness. The purpose behind laying a foundation for impeachment is met by showing or reading the prior written statement to the witness before asking questions about it.

(Citation and punctuation omitted.) *Whitehead v. State*, 232 Ga. App. 140, 141-142 (2) (499 SE2d 922) (1998). See *Smith*, 272 Ga. at 878 (3); *Duckworth v. State*, 268 Ga. 566, 569 (1) (492 SE2d 201) (1997). "[I]f a defendant reads only the portions of the prior written statement of a witness that are relevant to impeaching the witness, the defendant has not introduced evidence and does not lose the right to open and close." *Smith*, 272 Ga. at 878 (3). See also *Jones*, 260 Ga. App. at 489 (2). As such, Parker could have impeached the witnesses who allegedly contradicted themselves as a result of faded memories without losing his right to open and conclude closing argument before the jury. Parker thus cannot show that alleged loss of memory caused by the delay in the proceedings prejudiced him in any way.

For these reasons, Parker has failed to demonstrate that any of the three interests protected by the right to a speedy trial were impaired by the delay between his arrest and trial. As such, the trial court was authorized to weigh the fourth *Barker* factor in favor of the state.

(e) *Balancing of the Four Factors.* Given the fact that Parker waited until only a few weeks before trial to assert his constitutional right to a speedy trial, and in light of his failure to show that he was prejudiced by the delay, we conclude that the trial court acted within its discretion in denying Parker's speedy trial claim. See *Nusser*, 275 Ga. App. at 902; *Cravey v. State*, 147 Ga. App. 29, 31 (2) (248 SE2d 13) (1978). "This is particularly true where, as here, there is no evidence

that the delay was the result of a deliberate attempt by the State to hamper the defense." (Citation omitted.) *Nusser*, 275 Ga. App. at 902.

3. In 1992, Parker was indicted for child molestation but pled guilty to sexual battery. Prior to trial in this case, the state served notice upon Parker that it planned to introduce his 1992 guilty plea as similar transaction evidence. The trial court conducted a pre-trial hearing pursuant to *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) and ruled that the evidence of the 1992 guilty plea was admissible to prove Parker's intent and lustful disposition. At trial, the state introduced a certified copy of Parker's indictment and guilty plea, after Parker's ex-wife testified that the signature on the certified copy was his.[2] The indictment was redacted to omit any reference to "child molestation." The indictment and guilty plea also contained a description of the alleged unlawful act, namely, that Parker had "fondled the breast" of a child under the age of 14. Parker now argues on appeal that the trial court erred in allowing the state to introduce his 1992 guilty plea to sexual battery as similar transaction evidence. We do not agree.

Pursuant to *Williams*, 261 Ga. at 642 (2) (b), the state must make three affirmative showings before introducing similar transaction evidence:

> First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter. A decision to admit a similar transaction into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion.

(Citation omitted.) *Hill v. State*, 279 Ga. App. 666, 667 (1) (632 SE2d 443) (2006).

We conclude that the state satisfied all three requirements. First, the challenged evidence was admissible for the appropriate purposes of showing Parker's intent and lustful disposition. See *Cowan v. State*, 279 Ga. App. 532, 535 (4) (631 SE2d 760) (2006); *Lewis v. State*, 275 Ga. App. 41, 42-43 (2) (a) (619 SE2d 699) (2005).

Second, there was sufficient evidence that Parker committed the prior offense. As noted, the state introduced a certified copy of the

---

[2] Parker claims that the certified documents admitted by the state and shown to the jury reflected the sentence he received for the 1992 guilty plea. However, we have reviewed the documents, which were admitted as State's Exhibit 1, and find that they include no reference to the sentence Parker received.

guilty plea, and Parker's ex-wife testified that she was familiar with his signature from their years of marriage and that the signature on the certified copy was his. This documentary and testimonial evidence was sufficient to prove that Parker perpetrated a sexual battery in 1992. See OCGA § 24-7-6 ("Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness who shall swear that he knows or would recognize the handwriting shall be competent to testify as to his belief. . . ."); *Turner v. State*, 245 Ga. App. 476, 479 (2) (538 SE2d 125) (2000) (certified copy of conviction used in proving that defendant committed the prior offense).

Third and finally, there was sufficient similarity between the 1992 offense and the charged offense. "It is well established that similar transactions need not be identical to be admitted, and in cases involving sexual offenses, that rule is to be liberally construed." *Attaway v. State*, 279 Ga. App. 781, 783 (3) (632 SE2d 397) (2006). Indeed, "in child sexual abuse cases, a certified copy of a prior conviction for a sex crime against a child may, with no other evidence, sufficiently prove that the prior crime is similar to the current crime." (Footnote omitted.) *Lee v. State*, 241 Ga. App. 182, 183 (2) (525 SE2d 426) (1999). See also *Turner*, 245 Ga. App. at 479 (2). Thus, the certified copy of Parker's redacted indictment and guilty plea, which contained a factual description of the prior offense, were adequate for proving the required similarity. Parker's suggestion that the prior offense was too remote in time does not change this conclusion. "Where, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion." (Punctuation and footnote omitted.) *Copeland v. State*, 276 Ga. App. 834, 837 (1) (625 SE2d 100) (2005).

4. As previously discussed, the victim described at trial how Parker had improperly touched her on June 11, 1999 on the trip to and in the parking lot at the airport. The indictment, however, only charged Parker for the improper touching that occurred on June 12, 1999 — the touching that took place in the early morning hours in J. P.'s bedroom. Parker argues that the victim's testimony concerning the airport incident constituted similar transaction evidence, and, therefore, should have been disallowed since the state never gave notice to Parker that it planned to introduce the testimony at trial. See Uniform Superior Court Rules 31.1 and 31.3. Again, we disagree. The notice requirements found in Rules 31.1 and 31.3 do not apply to evidence of prior difficulties between the defendant and victim. *Bean v. State*, 239 Ga. App. 106, 107 (1) (521 SE2d 19) (1999).

5. In his final claim of error, Parker contends that the two counts of child molestation should not have been charged as separate counts

in the indictment and should have been merged for purposes of sentencing. We are unpersuaded. Parker's contention is controlled directly and adversely to him by *Lunsford v. State*, 260 Ga. App. 818, 820-821 (1) (581 SE2d 638) (2003).

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED JANUARY 18, 2007 —
RECONSIDERATION DENIED FEBRUARY 23, 2007 — 

*Benjamin C. Free*, for appellant.
*Daniel J. Porter, District Attorney, Tracie J. Hobbs, Assistant District Attorney*, for appellee.