**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 12, 2026

# In the Court of Appeals of Georgia

A26A0449. AMERIS BANK et al. v. AXSON LIGHT WEST PROPERTIES, INC. et al.

DAVIS, Judge.

Axson Light West Properties, Inc., Axson Light East Properties, Inc., and Wayne Smith (the "Plaintiffs") filed this action seeking to quiet title to certain railroad property, arguing that the property had been abandoned for use by the railroad and therefore reverted to them according to the terms of various deeds. St. Mary's Railway West, LLC and Ameris Bank (the "Defendants") moved to dismiss, arguing that this action is pre-empted by federal law because the Surface Transportation Board (STB) has exclusive jurisdiction to determine whether a railroad is abandoned. The trial court denied the motion, and we granted interlocutory

review. We agree with St. Mary's and Ameris Bank that this action is pre-empted by federal law, and so we reverse the denial of the motion to dismiss.

"We review a trial court's ruling on a motion to dismiss de novo, viewing all well-pled allegations in the complaint as true." *Hobbs v. Great Expressions Dental Ctrs. of Ga., P.C.*, 337 Ga. App. 248, 248 (786 SE2d 897) (2016).

The Plaintiffs filed this declaratory judgment action against St. Mary's and Ameris Bank, seeking to quiet title to the property and arguing that the tracts of land owned by St. Mary's reverted to them under the reversionary clauses in various deeds. According to the complaint, the property at issue contains portions of a railway line in Atkinson County, Georgia, that is currently owned by St. Mary's. Ameris Bank has a security interest in the property. The deeds at issue all similarly allege that St. Mary's predecessor had a right to an interest in the property: (1) "…So long as they, their successors, and assigns shall maintain and use said road but to revert to the said party of the first part whenever same shall be abandoned;" (2) "…So long as they, their successors, and assigns shall maintain and use said Railroad but to revert to the said party of the first part whenever said road shall be abandoned;" and (3) "… To have and to hold said railroad company as long as they, their successors, and assigns

shall maintain and use said road, but to revert to the said part of the first part whenever said road shall be abandoned." The Plaintiffs own property adjacent to the property at issue, and they allege that the railroad has been abandoned and not been used in over ten years.

The Defendants filed a motion to dismiss, arguing that the STB has the sole authority to determine whether a railroad was abandoned. They contended that since the STB has not yet made that determination, the action must be dismissed because any action to declare the property abandoned is pre-empted by federal law. Following a hearing, the trial court denied the motion, finding that "Georgia real estate law may interpret agreed to provisions of parties for deed purposes without violation of federal statute or constitutional law[.]" We granted the Defendants' application for interlocutory review.[1]

"The preemption doctrine is a product of the Supremacy Clause, which invalidates state laws that interfere with, or are contrary to, federal law." *Norfolk S.*

---

[1] The Plaintiffs contend that this appeal should be transferred to the Georgia Supreme Court because it involves issues relating to title of land and equity. However, since the amendment of OCGA § 15-3-3.1, effective January 1, 2017, this Court now has appellate jurisdiction over those types of cases. See *Wallace v. Wallace*, 301 Ga. 195, 197(1) n.3 (800 SE2d 303) (2017).

*Ry. Co. v. Zeagler,* 293 Ga. 582, 598(3)(a) (748 SE2d 846) (2013) (punctuation omitted). "Congress has placed the power to regulate railroads with the STB ... and it has granted the STB broad jurisdiction over transportation by rail carriers." *McCloud-Pue v. Atlanta Beltline, Inc.*, 364 Ga. App. 789, 791 (874 SE2d 482) (2022) (quotation marks omitted). "This power to regulate railroads derives from the Interstate Commerce Act, as modified by the Interstate Commerce Commission Termination Act of 1995 ('ICCTA'), which is among the most pervasive and comprehensive of federal regulatory schemes and has consequently presented recurring pre-emption questions from the time of its enactment." Id. at 791-792 (quotation marks omitted).

"[C]ourts have traditionally looked to STB decisions when analyzing a claim of preemption." *McCloud-Pue*, 364 Ga. App. at 793.

> In 2005, the Board articulated a framework for analyzing preemption claims, and under that framework, state and local laws and/or claims asserted under those laws may be preempted either categorically or as applied. A state or local law (and any action brought thereunder) is categorically preempted if the law itself or the remedy it provides directly conflicts with exclusive federal regulation of railroads and thereby unreasonably burdens interstate commerce. The second category of preempted state laws are those that are preempted as applied. The

as-applied preemption analysis is used in those cases involving a traditional state law cause of action — i.e., a cause of action that arises under generally applicable statutory or common law that is not directed specifically at railroads or their property. In such cases, preemption occurs not because the law itself seeks to regulate railroads, but because allowing a particular state law claim to proceed would "have the effect of unreasonably burdening or interfering with rail transportation." The question of whether a state law cause of action is preempted as applied is a fact-specific one, and depends heavily on the circumstances of a particular case.

Id. at 793.

In considering an adverse possession claim, for instance, this Court, after finding that the relevant STB decision was persuasive, held "that state law adverse possession claims are categorically preempted by the ICCTA." *McCloud-Pue*, 364 Ga. App. at 793. Thus, this Court determined "that the adverse possession clock cannot run while the land is under the STB's jurisdiction." Id. at 794. By contrast, the STB has held that general questions of property law are best left to state courts. In *Allegheny Valley Railroad Company*, Docket No. FD 35388 (STB Apr. 25, 2011), the STB considered a claim regarding the size and extent of a railroad easement. The STB determined that whether a claimant owned just an easement or the property in fee

simple was better "handled by a tribunal that frequently addresses such matters." The STB noted that both parties agreed that a railroad right-of-way existed on the property.

Under the ICCTA, 49 USC § 10501(b)(2), the jurisdiction of the STB over "the construction, *acquisition*, operation, *abandonment*, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State . . . is exclusive . . . and preempt the remedies provided under Federal or State law." (emphasis supplied). See also *Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U. S. 311, 320(III)(A) (101 SCt 1124, 67 LE2d 258) (1981) (declaring that the authority of the Interstate Commerce Commission (the STB's predecessor) over railroad abandonments was both "exclusive" and "plenary"). 49 USC § 10903 sets out what a rail carrier must do before the STB to abandon any part of its railroad lines,[2] and 49 USC § 10903(a)(1)(B)

_____

[2] We note that before making an abandonment determination, the STB must consider many different factors beyond the mere non-use of the railroad, see, e.g., 49 USC §§ 10903(b)(2) (STB must consider the interests of railway employees), 10903(d) (STB must consider impact on rural and community development), and the STB is empowered to attach modifications and conditions to the abandonment. 49 USC § 10903(e)(1)(B). Thus, the STB's determination of whether a railroad is abandoned involves many more factors beyond the fact that it is currently sitting idle.

again plainly sets out that "[a]n abandonment or discontinuance may be carried out only as authorized under this chapter."

Here, the Plaintiffs seek a declaration from the trial court that ownership of the railroad properties have reverted to them because they are no longer being used as a railroad and that the railroad "abandoned" them. This determination necessarily requires a conclusion and ruling that the railroad right-of-way no longer exists because the railroad is "abandoned." Any determination that the railroad right-of-way is dissolved or "abandoned" falls squarely within the STB's exclusive jurisdiction under 49 USC §§ 10501(b) and 10903 to control the entry or departure of railways from the national rail network. Accordingly, the Plaintiffs' action is categorically preempted because it directly conflicts with the STB's exclusive regulation of railroads and railway property, and the Plaintiffs are asking the trial court to make a determination it lacks the power to make. *Preseault v. ICC*, 494 U. S. 1, 8(I)(A) (110 SCt 914, 108 LE2d 1) (1990) ("State law generally governs the disposition of reversionary interests, *subject of course to the ICC's "exclusive and plenary" jurisdiction to regulate abandonments and to impose conditions affecting postabandonment use of the property*.") (emphasis supplied). Instead, the STB must first make the determination that the railroad is

7

abandoned before the Plaintiffs' reversionary interests take effect. See *Caldwell v. United States*, 391 F3d 1226, 1228-29(I) (Fed. Cir. 2004) (once "the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect.").[3]

We note that the situation presented here is far from uncommon. Indeed, the United States Supreme Court has observed that "many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests. While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations." *Preseault*, 494 U. S. at 8(I)(A). Nevertheless, we again recognize that the pre-emption analysis depends on the impact that the type of claim presented imposes on the nation's railroads and not whether the railroad is currently actively using its right-of-way. Even if a decision here

---

[3] In their brief, the Plaintiffs appear to argue that the STB granted the authority to abandon the railroad property back in 2003. The STB's alleged decision, however, is not in the record, nor does it appear to be publicly reported. "[F]actual assertions in briefs that are unsupported by the record cannot be considered in the appellate process." (Citation omitted.) *Parker v. State*, 283 Ga. App. 714, 717(2)(d) (642 SE2d 111) (2007).

might have little actual, practical effect on current plans for active railroad operations, *circumstances can change*. The petitioners' approach to preemption would permit landowners to carve off strips of railroad rights of way all over the country for non-rail use, even though the Board has not authorized the rights of way to be permanently removed from the nation's rail system under Title 49. That untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible.

*Skidmore v. Norfolk S. Ry. Co.*, 1 F4th 206, 214 (II)(B)(1)(a) (4th Cir. 2021) (punctuation omitted; emphasis in original).

Accordingly, because this action is pre-empted by federal law, we reverse the trial court's denial of the motion to dismiss.

*Judgment reversed. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*