A08A0538. THRASHER v. THE STATE.

(666 SE2d 28)

ELLINGTON, Judge.

A DeKalb County jury found Dexter Thrasher guilty beyond a reasonable doubt of driving under the influence of alcohol ("DUI") to the extent that it was less safe to do so, OCGA § 40-6-391 (a) (1), and failure to maintain a lane, OCGA §§ 40-6-48 and 40-6-1. Thrasher appeals from the judgment of conviction, contending that the trial court erred in denying his motion to suppress, in permitting the State to present certain evidence, and in charging the jury. He also challenges the sufficiency of the evidence. For the following

reasons, we affirm his conviction for DUI and reverse his conviction for failure to maintain a lane.

The evidence, viewed in favor of the jury's verdict,[1] shows the following. On June 15, 2006, a woman stopped her minivan at a stop sign at the intersection of Boring Road and Flat Shoals Parkway in DeKalb County. At the same time, Thrasher was driving his pickup truck on Flat Shoals Parkway. According to the woman, Thrasher turned right onto Boring Road, he was driving "kind of fast" as he made the turn, and he "[s]wung out a little bit too far," hitting the driver's side rear bumper of the woman's minivan. The woman felt the collision, which cracked her van's bumper and scratched its paint. Thrasher stopped his truck for a few seconds, then, before the woman could get out of her car, Thrasher "took off."

The woman followed Thrasher, who threw a bag out of the window as he drove down the road. Then Thrasher pulled into the driveway of a nearby house and parked his truck behind the house. The woman parked her van on the street and called 911. An officer arrived at 1:45 p.m., briefly talked to the woman, and observed some minor damage to her van. The officer then talked to Thrasher, who admitted that he had had two glasses of wine earlier that day and that he had just gotten back from driving his truck to the store. Thrasher denied that he had hit anyone with his truck during his trip to the store. The officer looked at Thrasher's truck, which had damage that was consistent with the woman's allegations. The woman identified Thrasher's truck as the one that hit her van, and, as she talked to Thrasher and the officer, she smelled the odor of alcohol coming from Thrasher.

The officer conducted field sobriety tests and, based upon Thrasher's failure to successfully complete the tests, he arrested Thrasher for DUI. He transported Thrasher to the police station, where another officer administered a blood alcohol breath test. During the test, Thrasher initially blew a sufficient air sample and the machine registered a blood alcohol level of 0.146. Thrasher failed to blow enough air into the machine during the second attempt, however, and the machine failed to record a blood alcohol level for that attempt, registering instead that there was an insufficient sample.

The State charged Thrasher with DUI (less safe), DUI (per se), failure to maintain a lane, and leaving the scene of an accident. At trial, the court granted a directed verdict of acquittal on the DUI (per se) charge, and the jury acquitted Thrasher of leaving the scene of an

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

accident. Thrasher appeals from the judgment of conviction on the remaining charges.

1. Thrasher argues that the trial court erred in denying his motion to suppress the results of his breath test. Thrasher argues that the applicable statute, OCGA § 40-6-392 (a) (1) (B),[2] requires that, for a breath test result to be admissible, the State must show that results from two sequential samples did not differ from each other by an alcohol concentration of greater than 0.020 grams. According to Thrasher, the only exception applies when a defendant initially provides an adequate breath sample, then *refuses* to provide a second breath sample. Thrasher contends that he never refused to give a second breath sample, but that he was physically incapable of providing a second sample because he suffers from chronic asthma, bronchitis, pneumonia, and shortness of breath.[3] Therefore, he argues that, absent a second breath test result to "confirm the validity" of the first result, the first result was inadmissible and should have been excluded at trial. We disagree.

> Because the trial court sits as the trier of fact when ruling on a motion to suppress . . . , its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any

---

[2] Under OCGA § 40-6-392 (a) (1) (B),

[i]n all cases where the arrest is made on or after January 1, 1995, and the state selects breath testing, two sequential breath samples shall be requested for the testing of alcohol concentration. For either or both of these sequential samples to be admissible in the state's or plaintiff's case-in-chief, the readings shall not differ from each other by an alcohol concentration of greater than 0.020 grams and the lower of the two results shall be determinative for accusation and indictment purposes and administrative license suspension purposes. No more than two sequential series of a total of two adequate breath samples each shall be requested by the state; provided, however, that after an initial test in which the instrument indicates an adequate breath sample was given for analysis, any subsequent refusal to give additional breath samples shall not be construed as a refusal for purposes of suspension of a driver's license under Code Sections 40-5-55 and 40-5-67.1. Notwithstanding the above, a refusal to give an adequate sample or samples on any subsequent breath, blood, urine, or other bodily substance test shall not affect the admissibility of the results of any prior samples. An adequate breath sample shall mean a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis.

[3] For the purpose of the motion to suppress, the State stipulated that a physician has treated Thrasher since the early 1990s for various conditions, including chronic asthma, bronchitis, pneumonia, and shortness of breath. The stipulation, however, did not state that these conditions prevented Thrasher from providing an adequate breath sample for the intoxilyzer test. Further, in its order denying the motion to suppress, the trial court ruled that it "was not persuaded by [Thrasher's] testimony that [he] made the intoxilyzer operator aware of any medical conditions that prevented him from rendering [a] second valid sample." At trial, the intoxilyzer operator testified that Thrasher never gave an excuse for why he was unable to provide a second adequate breath sample.

evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.

(Citations and punctuation omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

In *Chamberlain v. State*, 246 Ga. App. 423, 424 (541 SE2d 64) (2000), this Court addressed a situation in which the defendant claimed that she was unable to produce a second breath sample because she had a history of Legionnaire's Disease, a respiratory infection. This Court held that "the fact that Chamberlain failed or refused to provide a second sample, as requested by the State, did not affect the admissibility of the results of the first sample." Id. at 425. Then, last year, this Court relied upon *Chamberlain* when deciding whether the trial court correctly denied a motion to suppress the results of the defendant's breath test in a case where the defendant could not produce a second, "sequential" breath sample immediately after the first because she was upset and crying. *Davis v. State*, 286 Ga. App. 443, 446 (649 SE2d 568) (2007). In ruling that the results were admissible, this Court reasoned that

[i]t would make little sense to hold that the results of [the first test were] inadmissible due to the defendant's inability to immediately give a second breath sample when a complete refusal or failure to take a second test does not affect the admissibility of the results of any prior samples. As we held in *Chamberlain*, the fact that a defendant "*failed or refused* to provide a second sample, as requested by the State, did not affect the admissibility of the results of the first sample."

(Citation omitted; emphasis in original.) Id. Based upon this authority, we conclude that the trial court in this case properly found that the result of Thrasher's first breath sample was admissible. Thus, there was no error in its denial of Thrasher's motion to suppress on this basis.

570

2. Thrasher contends the court abused its discretion when it initially excluded a witness for the State because the State had failed to name the witness on its witness list but, later, after the State had rested, reversed its ruling and allowed the State to reopen the evidence to present the witness's testimony. The witness at issue was the operator of the intoxilyzer machine that the officers used to measure Thrasher's blood alcohol level. According to Thrasher, without this witness's testimony, the results of Thrasher's breath test would have been inadmissible, and defense counsel relied upon the court's decision to exclude the testimony when he planned his defense strategy. Thrasher argues that the court's subsequent decision to admit the testimony and, thus, evidence of his 0.146 blood alcohol breath test result, after counsel had adopted his trial strategy "undermine[d] [counsel's] credibility in front of the jury."

> Upon learning of a discovery violation, the trial court, in its discretion, may order the [S]tate to permit an interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. This provision does not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Rather, it vests the trial court with discretion to fashion an appropriate remedy for the violation. We will not reverse the trial court's decision allowing [the witness's] testimony unless it abused that discretion.

(Punctuation and footnotes omitted.) *Arnold v. State*, 253 Ga. App. 307, 310 (2) (560 SE2d 33) (2002). See also OCGA §§ 17-16-6 (sanctions and remedies for failure to comply with discovery requirements); 17-16-8 (discovery requirements regarding information on witnesses); *McLarty v. State*, 238 Ga. App. 27, 29 (2) (516 SE2d 818) (1999) ("When the identity and involvement of a witness are otherwise disclosed to defendant in discovery provided to him by the State, the purpose of the witness list rule is served and the court may allow the State to call the witness even though he or she was not listed on the State's formal witness list.") (citations omitted). Further, absent a showing of prejudice and bad faith, "an interview of the witness is the remedy for failure to comply with the requirement that a witness must be identified prior to trial." (Punctuation and footnote omitted.) *Arnold v. State*, 253 Ga. App. at 310 (2). As for the trial court's decision to reverse its earlier ruling and allow the State to reopen the evidence in order to present the witness's

testimony, this is

> a matter which rests within the sound discretion of the trial court. A trial court's ruling in this regard will not be reversed in the absence of an abuse of discretion. Whether there has been a reversible abuse of discretion requires a consideration of the totality of the circumstances.

(Citations and punctuation omitted.) *Bramblett v. State*, 259 Ga. App. 427, 429 (1) (577 SE2d 100) (2003).

The trial transcript in this case shows that, during its opening statement, the State referred to the anticipated testimony of the operator of the intoxilyzer machine. Defense counsel objected and moved to exclude the operator's testimony, arguing that the State had failed to provide timely notice that it might call the operator as a witness. The court granted the motion on that basis, and defense counsel proceeded with his opening statement, during which counsel told the jury that Thrasher was disabled, that his disabilities caused him to have trouble with intoxication tests requiring coordination and balance, that he was on medications that prohibited him from drinking alcohol, and that Thrasher had stopped drinking "years ago."[4] He also argued that the police officer improperly administered the field sobriety tests and that there were additional tests for intoxication he could have performed, but did not.

After the State had rested its case-in-chief and the defense had called a witness, the State asked the court to reconsider its decision to exclude the testimony of the intoxilyzer operator. The State argued that the operator's name was on the DUI arrest report as well as on the intoxilyzer results slip, both of which were produced to the defense during discovery. After hearing argument on the issue, the court stated that it had made a mistake when it had excluded the testimony and that, in the interest of fairness, it would allow the State to reopen its case to present the witness. It also gave the defense the option of finishing its defense before the State presented the operator's testimony, or allowing the State to present the witness immediately. Defense counsel opted to present its remaining witnesses, but reserved the right to recall its expert witness after the intoxilyzer operator's testimony. Counsel did not request a continu-

---

[4] These contentions were not supported by any evidence at trial; Thrasher did not testify and did not present any medical evidence. Also, as shown in footnote 3, supra, the State's stipulation to Thrasher's previous treatment for asthma and related disorders did not include a stipulation that the disorders prevented him from drinking alcohol or taking sobriety tests, was limited solely to the court's determination of whether to grant Thrasher's motion to suppress, and did not apply to the jury's determination of Thrasher's guilt or innocence at trial.

ance. After presenting its witnesses, defense counsel interviewed the operator during a break in the proceedings. Counsel later cross-examined the operator. Then, he presented the testimony of an expert witness who challenged the operator's findings, testifying that, in his opinion, Thrasher's physical manifestations (his eyes, speech, gait, etc.) and his performance on the field sobriety tests did not indicate that he was intoxicated to the extent that he would have had a 0.14 result on a breath test. Instead, he opined that Thrasher's breath test result should have been much lower, around 0.05 to 0.10.

Thus, the record shows that, when the court decided to admit the operator's testimony, defense counsel did not request a continuance, he interviewed and cross-examined the operator, and he presented expert testimony to contradict the operator's testimony. In addition, there was no evidence that the State actively concealed the operator's identity prior to trial or that it intentionally and with bad faith withheld the fact that he would testify at trial.

Moreover, although Thrasher claims that the admission of the operator's testimony prejudiced him by undermining his counsel's credibility in front of the jury, presumably because counsel had emphatically argued that Thrasher had not had a drink of alcohol in years, the transcript shows that the State presented a substantial amount of other evidence which supported a finding that Thrasher was under the influence of alcohol at the time he was arrested: he admitted to drinking two glasses of wine before 2:00 p.m. that day, he was driving too fast to make the turn onto Boring Road without hitting the woman's van, there was an odor of alcohol coming from Thrasher, and Thrasher failed field sobriety tests. All of this evidence was inconsistent with counsel's claim that Thrasher had not had a drink of alcohol in years, yet none of this evidence was a surprise to counsel when he developed his trial strategies and decided to make that argument.

Accordingly, Thrasher has failed to show that the outcome of the trial would have been different if the court had excluded the operator's testimony. *Arnold v. State*, 253 Ga. App. at 310 (2). After looking at the totality of the circumstances, we conclude that the trial court did not abuse its discretion when it decided to admit the operator's testimony and to allow the State to reopen its case-in-chief in order to present the testimony. *Bramblett v. State*, 259 Ga. App. at 429 (1); *Arnold v. State*, 253 Ga. App. at 310 (2).

3. Thrasher contends that the evidence was insufficient to support his conviction for DUI (less safe) and that the court erred in denying his motion for a directed verdict on that charge. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

As shown above, when the officer questioned Thrasher at approximately 2:00 p.m., Thrasher admitted that he had already had two glasses of wine earlier that day and that he had just come home after driving to the store. Further, Thrasher failed the field sobriety tests, and a breath test showed that he had a blood alcohol level of 0.146. This evidence, when combined with the woman's description of Thrasher's erratic driving and evidence that the collision caused damage to both Thrasher's truck and the woman's van, was sufficient to support the jury's verdict finding Thrasher guilty beyond a reasonable doubt of DUI (less safe). *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

4. Thrasher contends that the evidence was insufficient to support his conviction for failure to maintain a lane. Essentially, Thrasher argues that there was a fatal variance between the accusation and the proof at trial, because there was no evidence that he failed to maintain his lane while traveling on "Flat Shoals Road," as stated in the accusation.[5] We agree.

> Not every variance in proof from that alleged in the indictment is fatal. The essential test is to determine whether: (1) the accused was definitely informed as to the charges against [him] so that [he] was able to present [his] defense and not be taken by surprise by the evidence presented at trial; and (2) the accused is protected against another prosecution for the same offense. In essence, the true inquiry is whether there has been such a variance as to affect the substantial rights of the accused.

(Citations and punctuation omitted.) *Wegman-Fakunle v. State*, 277 Ga. App. 198, 200 (2) (626 SE2d 170) (2006), citing, inter alia,

---

[5] The accusation charged Thrasher with "operating a motor vehicle upon Flat Shoals Road, a roadway divided into marked lanes for traffic, and failing to keep said vehicle within a single lane in violation of OCGA §§ 40-6-48 and 40-6-1." It is undisputed that "Flat Shoals Road" and "Flat Shoals Parkway" are different names for the same road.

*DePalma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969).

In this case, it is undisputed that Flat Shoals Parkway and Boring Road are two separate roads that meet at an intersection; they are not part of the same road that is referred to, in the alternative, as either Flat Shoals Parkway or Boring Road. The evidence showed that Thrasher was driving on Flat Shoals Parkway before making a right turn onto Boring Road. The woman was stopped at a stop sign on Boring Road, facing Flat Shoals Parkway. While making the turn, Thrasher's truck hit the rear bumper of the woman's van. While this evidence might be relevant to whether Thrasher failed to maintain his lane while driving on Boring Road, there was no evidence that Thrasher failed to maintain his lane while driving on Flat Shoals Parkway.

Under these circumstances, the State's apparent mistake in naming the wrong road in the accusation is not a harmless misnomer; instead, it failed to definitely inform Thrasher as to the charge against him so that he was able to present his defense and not be taken by surprise by the evidence presented at trial. *Wegman-Fakunle v. State*, 277 Ga. App. at 200 (2). Nothing in the accusation alerted Thrasher that he would have to defend against a charge of failing to maintain his lane while driving on Boring Road. Because there was a fatal variance between the accusation and the evidence presented at trial, Thrasher's conviction for failing to maintain a lane must be reversed.

5. Thrasher argues that the trial court erred in denying his request to charge the jury that they must find that he refused to give a second breath sample before they may consider the result of the first breath test.[6] This argument fails for the reasons given in Division 1, supra.

6. Thrasher contends that the court erred in instructing the jury as follows: "Breath alcohol measuring equipment approved by the State Crime Lab is considered accurate if properly operated. No more than two sequential series of a total of two adequate breath samples each shall be requested of the State." Not only has Thrasher failed to cite to any authority to support this claim of error, but this Court has previously ruled that the first sentence of the challenged instruction is a correct statement of the law. *Johnson v. State*, 231 Ga. App. 215, 216 (498 SE2d 778) (1998). Further, the second sentence of the instruction is consistent with the language of OCGA § 40-6-392 (a) (1) (B). See Division 1, supra. Finally, the instruction was adjusted to the evidence. Accordingly, the court did not err in giving the instruction.

---

[6] The specific jury instruction requested by Thrasher is not in the record.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 18, 2008 —
RECONSIDERATION DENIED JULY 9, 2008 — 

*Deirdre L. O'Connor*, for appellant.
*Robert D. James, Jr., Solicitor-General*, A'Sheika L. Penn, *Assistant Solicitor-General*, for appellee.