## A11A1693. LAWSON v. THE STATE.

(722 SE2d 446)

ELLINGTON, Chief Judge.

A Clayton County jury found Anthony Lawson guilty of driving under the influence of alcohol, OCGA § 40-6-391 (a) (5) (per se); driving an uninsured vehicle, OCGA § 40-6-10 (b); driving a motor vehicle with a suspended registration, OCGA § 40-6-15 (a); and violating a county open container ordinance. Lawson challenges the sufficiency of the evidence supporting his convictions. For the reasons that follow, we affirm in part and reverse in part.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following. At about 3:00 a.m. on January 30, 2010, employees of a Clayton County McDonald's restaurant called the police to report a suspicious vehicle in the restaurant's parking lot. When an officer arrived, he saw a blue Chevrolet Blazer parked across the lines of two of the lot's marked spaces. The car's headlights were on, and the engine was running. As the officer approached the car, he saw only Lawson inside. Lawson was slumped in his seat, asleep, with both hands on the steering wheel. After the officer tapped on the window several times, Lawson woke up. He was very groggy, and he initially did not know his name or where he was. After struggling to find his license, Lawson eventually identified himself to the officer and the officer's Captain, who had just arrived.

The responding officer testified that there were two nearly empty bottles of vodka on Lawson's passenger seat. Lawson told the police that he was alone, that he had been drinking, and that he had consumed one grapefruit and vodka beverage before driving to the McDonald's. The officers testified that Lawson's speech was slurred; that he was drooling; that his eyes were bloodshot and his gaze "rolling"; that he moved his hands slowly, as if they weighed "a ton"; that his head swayed, as if he was off balance; and that he had great difficulty stepping out of his car. Lawson told the police that he had driven to McDonald's to get some food, and he indicated that he had driven there from the direction of the freeway. Both officers testified that Lawson appeared highly intoxicated and that, in their opinion, it was unsafe for him to drive. A test given shortly thereafter revealed that Lawson's blood-alcohol concentration was 0.157.

The responding officer testified that he checked the Georgia Crime Information Center database and determined that the vehicle that Lawson was driving had a suspended registration and was uninsured. Lawson admitted to the police that he had been driving without insurance. He told the police that the car belonged to

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

his father, and that he had been driving the car since his father had died. At trial, Lawson testified that he did not know the vehicle was not properly registered, that his sister wanted the car and that she was supposed to have taken care of any transfer of the registration after their father's death, and that his father usually paid the insurance on the car in advance.

In addition to this evidence, the State showed that, in 2006, Lawson was arrested for DUI after he pulled into the parking lot of a Huddle House at 4:30 a.m. He had an open container in the car. Although he told the police that he only consumed one beer, his blood-alcohol concentration was 0.148. Lawson pleaded guilty to the offense. Further, Lawson also admitted at trial that he had a second prior DUI conviction from 2000.

1. Lawson contends that the State's evidence fails to establish that he was driving or in actual physical control of a moving vehicle, as required for a conviction under OCGA § 40-6-391 (a). He argues that his mere presence in the stopped vehicle was insufficient to prove that he drove under the influence of alcohol. Specifically, he argues that there was no evidence that he became drunk before he drove his car to the McDonald's and parked there rather than after, as he testified at trial.

> [A] conviction for driving or being in actual physical control of a moving vehicle while under the influence of intoxicants may be based on circumstantial evidence. The circumstantial evidence need not exclude every hypothesis save that of guilt, but only reasonable hypotheses, so as to justify a finding of guilt beyond a reasonable doubt. We have no yardstick to measure consistency or reasonableness, save the opinion of the [factfinder], whose function it is to determine [the] credibility of witnesses and questions of reasonableness.

(Footnote omitted.) *Merritt v. State*, 288 Ga. App. 89, 94 (1) (653 SE2d 368) (2007).

In addition to the fact that the police found a very drunk Lawson alone in the driver's seat, his hands on the wheel of a car that had its headlights on and its engine running, Lawson admitted to the police that he had been drinking and that he drove to the McDonald's to get some food after consuming alcohol. Although the police officers did not see Lawson's car moving, they observed circumstances from which the jury could reasonably "infer that [Lawson] was in actual physical control of the car when it was moved to the location where the officer[s] found it, and that [Lawson] was intoxicated . . . while moving it there." (Citation and punctuation omitted.) *Deering v.*

*State*, 244 Ga. App. 30, 32 (1) (535 SE2d 4) (2000). See also *Jenkins v. State*, 223 Ga. App. 446, 447 (1) (478 SE2d 143) (1996); *Schoicket v. State*, 211 Ga. App. 636, 637 (2) (440 SE2d 65) (1994); *Melendy v. State*, 202 Ga. App. 638 (1) (415 SE2d 62) (1992); *Johnson v. State*, 194 Ga. App. 501, 501-502 (1) (391 SE2d 132) (1990). Given Lawson's admission and the officers' observations, the jury was authorized to find from this evidence that no other reasonable hypothesis existed for Lawson's presence at the McDonald's, other than that he drove the car while under the influence of alcohol.

2. Lawson contends the State failed to prove, as alleged in the accusation, that he "did knowingly operate a motor vehicle without effective insurance on such vehicle" in violation of OCGA § 40-6-10 (b).[2] That Code section provides, in relevant part: " 'An owner or any other person who knowingly operates or knowingly authorizes another to operate a motor vehicle without effective insurance on such vehicle or without an approved plan of self-insurance shall be guilty of a misdemeanor[.]' " "A material element of subsection (b) is the driver's knowledge that the car is uninsured. The issue in this case is therefore whether the State proved that element beyond a reasonable doubt." *English v. State*, 261 Ga. App. 157, 159-160 (3) (582 SE2d 136) (2003).

The State presented evidence that the car Lawson was driving was uninsured and that Lawson admitted to the police that he was "driving without insurance." Thus, the jury could find from this evidence, beyond a reasonable doubt, that Lawson did knowingly operate a motor vehicle without effective insurance as alleged in the accusation. See *Thompson v. State*, 243 Ga. App. 878, 881 (2) (534 SE2d 151) (2000) (When defendant told police she had no insurance, but later testified at trial that she believed she had insurance coverage, the question of knowledge was a credibility issue for the jury to decide under proper instructions from the trial court.).

3. Lawson contends the State failed to prove that he violated OCGA § 40-6-15 (a), which provides: "Any person who knowingly drives a motor vehicle on any public road or highway of this state at a time when the vehicle registration of such vehicle is suspended, canceled, or revoked shall be guilty of a misdemeanor." Lawson contends that, although the officers testified that the car that he was

---

[2] The accusation alleged that Lawson had no insurance coverage, not that he had no proof of insurance coverage. The court's judgment also reflects that Lawson was convicted of "Insurance – None." Thus, the State alleged and Lawson was convicted of a violation of OCGA § 40-6-10 (b), not OCGA § 40-6-10 (a) or OCGA § 33-34-4, as Lawson argues. See *English v. State*, 261 Ga. App. 157, 159-160 (3) (582 SE2d 136) (2003) (When a charging instrument "describes the crime as 'no insurance,' as opposed to 'no proof of insurance,' it is properly construed as charging a violation of OCGA § 40-6-10 (b).") (citation omitted).

driving had a suspended registration, their testimony, to which he objected, constituted hearsay, had no probative value, and was insufficient to establish that he knew the registration had been suspended.

Pretermitting whether the officers' testimony constituted hearsay, we agree that there is no evidence in the record from which the jury could reasonably infer that Lawson "knowingly" drove a motor vehicle with a suspended, cancelled, or revoked registration. Although "knowledge or scienter may be proved, like any other fact, by circumstantial evidence[,]" (citations and punctuation omitted) *Langham v. State*, 196 Ga. App. 71, 72 (2) (395 SE2d 345) (1990), to warrant a conviction on such circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6.

Here, the State failed to offer any evidence from which the jury could reasonably infer that Lawson had either actual or constructive knowledge of the car's registration status. Lawson did not own the car. The evidence shows only that he had been driving it. The State did not show that Lawson inherited the car nor did it present any facts from which the jury could infer that the car had been in his possession, custody, or control for any specific length of time. In fact, the State adduced no evidence establishing to whom the car was actually registered, when the car's registration had been suspended, or for what reason. Lawson's unrebutted testimony established that the car did not belong to him, that he did not know the car was not properly registered, that his sister wanted the car, and that she was supposed to get it registered in her name after their father died. Thus, the State's evidence fails to exclude the reasonable hypothesis that, when Lawson drove his father's car, he did not know that the registration had been suspended. Consequently, this conviction must be reversed. See *English v. State*, 261 Ga. App. at 159-160 (3) (State failed to present evidence from which the jury could infer that driver knowingly drove without insurance.); see also *In the Interest of J. S.*, 303 Ga. App. 788, 790 (1) (694 SE2d 375) (2010) ("(W)hen the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt.") (punctuation and footnote omitted).

4. Lawson contends that his conviction for violating the county's open container ordinance must be reversed because the State failed to make a certified copy of the ordinance a part of the record at trial. We agree.

The record reveals that, in Count 3 of the accusation, the State

charged Lawson with "possessing an open container of any alcoholic beverage while operating a motor vehicle" in Clayton County, in violation of that county's open container ordinance. The record shows that the State submitted a certified copy of the ordinance to the court during trial. However, during the jury charge conference, the court discussed with counsel the law applicable to the open container instruction, suggesting that he would charge the jury "according to OCGA." The instruction the court ultimately gave the jury tracked the language of OCGA § 40-6-253 (b) (1) almost verbatim:

> A person shall not consume any alcoholic beverage or possess any [open] alcoholic beverage container in the passenger area of any motor vehicle which is on the highway or shoulder of any public highway.

State's Exhibit 8, which was made part of the record on appeal, declares on its first page that it is a certified copy of the Clayton County ordinances pertaining to open containers and is comprised of "pages CD6:6.1 through CD6:7, Chapter 6 'Alcoholic Beverages'; Article I." The document in the record, however, contains only one of the pages referenced on the certification sheet, CD6:6.1, which sets forth the definition of an open container. The document does not set forth the ordinance prohibiting the possession of an open container.

It is axiomatic that the State must prove the crime charged in the accusation or indictment beyond a reasonable doubt. *Jones v. State*, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000). While the record contains evidence showing that Lawson had in his car, within his reach, an open container of an alcoholic beverage,

> there is no showing that such conduct violated any cognizable criminal law of the local government. In the absence of evidence of a properly admissible copy of the ordinance involved, neither the trial court nor this court may take judicial notice of the existence of a local ordinance. Because the State failed to meet its burden of proving beyond a reasonable doubt that [Lawson's possession of an open container] violated any local ordinance, his conviction must be reversed.

(Citations and punctuation omitted.) *Poole v. State*, 229 Ga. App. 406, 409 (2) (494 SE2d 251) (1997).

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Miller, J., concur.*

DECIDED JANUARY 27, 2012.

*Ramona D. Terry, Leon Hicks*, for appellant.
*Tasha M. Mosley, Solicitor-General, Keith E. Gammage, Assistant Solicitor-General*, for appellee.