**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1282. SMITH v. THE STATE.                                        DO-048 C

DOYLE, Presiding Judge.

Following a bench trial, Jason Smith appeals from his conviction for driving under the influence of alcohol with an unlawful blood alcohol concentration ("DUI per se") in violation of OCGA § 40-6-391 (a) (5). Smith contends that (1) the evidence was insufficient to support the finding of guilt; (2) the printed Intoxilyzer 5000 test results were inadmissible under OCGA § 40-6-392 (a) (1) (B); (3) the State unlawfully failed to disclose the computer "source code" of the Intoxilyzer 5000; (4) the trial court erroneously denied his motion for a continuance pending the outcome of a Kentucky appeal pertaining to the source code; and (5) the trial court ruled on his motion for discharge and acquittal without making required findings. For the reasons

that follow, we affirm the finding of guilt and remand for proper findings under *Barker v. Wingo*[1] and *Doggett v. United States*.[2]

Construed in favor of the verdict,[3] the evidence shows that an officer was dispatched to the scene of an automobile wreck, where he encountered Smith being treated by paramedics near his wrecked car. The paramedics told the officer that they believed Smith was under the influence of alcohol, and the officer smelled an odor of alcohol about Smith when he spoke to him. The officer called the DUI unit to investigate, and a trained DUI investigator, Sergeant Eric Teague, was dispatched to the scene. Teague smelled an odor of alcohol as he spoke to Smith, who admitted that he had "several drinks," and Teague conducted field sobriety tests and administered an alcosensor test which returned a positive result. Teague concluded that Smith was under the influence of alcohol to the extent that he was a less safe driver and arrested him.

Teague read Smith the implied consent warning, and Smith agreed to take a breath test. Teague then transported him to a pretrial detention center where the

---

[1] 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

[2] 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992).

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

breath test was administered on an Intoxilyzer 5000. The test registered a 0.126 result on the first sample, and the second sample of the test did not return a result.

Based on the investigation and the breath test, Smith was charged with DUI per se and driving under the influence to the extent it was less safe to do so[4] ("DUI less safe"). During a bench trial, the State dropped the DUI less safe charge, and the trial court found Smith guilty on the DUI per se count. Smith's motion for new trial was denied, giving rise to this appeal.

1. Smith first contends that there was insufficient evidence showing that he had a blood alcohol concentration of 0.08 grams or more at any time within three hours after driving or being in actual physical control of the car, as required by the DUI statute.[5] We disagree.

When an appellate court reviews the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of

---

[4] See OCGA § 40-6-391 (a) (2).

[5] See OCGA § 40-6-391 (a) (5) (unlawful to drive "while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving . . . from alcohol consumed before such driving . . . ended").

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[6]

Viewed under this standard, Smith's argument fails.

"Driving a vehicle while intoxicated may be shown by circumstantial evidence, which must exclude every other reasonable hypothesis in order to support a conviction."[7] Whether a competing hypothesis is reasonable is for the fact finder because it "is the best 'doctor of doubt.'"[8] "[W]here the [fact finder] is authorized to find that the evidence, though circumstantial, was sufficient to exclude every

---

[6] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[7] *State v. Hill*, 178 Ga. App. 669, 670 (344 SE2d 491) (1986).

[8] Id. See *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012) ("Whether an alternative hypothesis is reasonable is a question committed principally to the jury that heard the evidence. . . ."); *Silvers v. State*, 297 Ga. App. 362, 363 (677 SE2d 410) (2009) ("It is within the province of the trier of fact to determine whether or not a defendant's explanation advanced at trial is reasonable or satisfactory.") (punctuation omitted).

reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law."[9]

Smith first argues that the evidence failed to show that he was the driver.[10] But the first responding officer testified that "[p]aramedics came out. They checked out the driver," and the officer smelled an odor of alcohol on "the driver," whom he identified as Smith at trial. The record does not disclose whether this description was hearsay from the paramedics or from Smith himself, nor did Smith object on that ground, so Smith has not demonstrated that this characterization of him as the driver was inadmissible. Furthermore, Teague testified that Smith volunteered to him that he was not at fault for the traffic accident because someone else had hit or sideswiped him.[11] Smith also discussed with the officer the fact that even if he was not at fault he could be considered an impaired driver. Based on the record before us, we conclude

---

[9] *Blevins*, 291 Ga. at 816.

[10] There was at least one passenger at the scene.

[11] Smith was not ticketed or found to have committed an infraction related to the accident itself.

5

that evidence authorized the trial court to find that no reasonable hypothesis existed other than he was the driver of the car.[12]

Next, with respect to whether Smith was shown to have an unlawful blood alcohol concentration within three hours of driving, Teague testified on direct that the test was done within three hours of Smith's driving. He further explained that this was based on interval between the computer-recorded time that he was dispatched to the scene (10:45 p.m.) upon request by the initial investigating officer and the time recorded on the Intoxilyzer test (11:44 p.m.). Further, there was evidence that paramedic first responders were still treating Smith while the initial responding officer was on the scene, and that the initial officer smelled alcohol on Smith at that time , so this supports a finding that the accident scene was still "fresh" at the time Teague was dispatched, which preceded the Intoxilyzer test by only one hour.[13] Finally, there was no evidence that Smith consumed alcohol after driving, so Smith's test result, 0.126, following these events suggests that his blood alcohol concentration

---

[12] Cf. *Lawson v. State*, 313 Ga. App. 751, 753 (1) (722 SE2d 446) (2012); *Jones v. State*, 219 Ga. App. 780, 781 (2) (466 SE2d 667) (1996); *Frye v. State*, 189 Ga. App. 181, 181-182 (375 SE2d 101) (1988).

[13] Compare *Norton v. State*, 280 Ga. App. 303, 304 (640 SE2d 48) (2006).

6

would have been even higher closer in time to his driving.[14] Accordingly, the evidence authorized the trial court to find that the only reasonable hypothesis was that Smith's blood alcohol concentration was above the statutory 0.08 threshold within three hours after he drove.

2. Smith next contends that the breath test results were inadmissible because they did not comply with OCGA § 40-6-392 (a) (1) (B). That Code section provides as follows:

> In all cases where the arrest is made on or after January 1, 1995, and the [S]tate selects breath testing, two sequential breath samples shall be requested for the testing of alcohol concentration. For either or both of these sequential samples to be admissible in the [S]tate's or plaintiff's case-in-chief, the readings shall not differ from each other by an alcohol concentration of greater than 0.020 grams and the lower of the two results shall be determinative for accusation and indictment purposes and administrative license suspension purposes. No more than two sequential series of a total of two adequate breath samples each shall be requested by the [S]tate; provided, however, that after an initial test in which the instrument indicates an adequate breath sample was given for analysis, any subsequent refusal to give additional breath samples shall not be construed as a refusal for purposes of suspension of a driver's license under Code Sections 40-5-55 and 40-5-67.1. *Notwithstanding*

---

[14] See, e.g., *Stadnisky v. State*, 285 Ga. App. 33, 35 (1) (645 SE2d 545) (2007).

*the above, a refusal to give an adequate sample or samples on any subsequent breath, blood, urine, or other bodily substance test shall not affect the admissibility of the results of any prior samples. An adequate breath sample shall mean a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis.*[15]

Here, Smith's first sample was adequate, and the Intoxilyzer registered a 0.126 blood alcohol concentration. Smith blew a second time but did not provide a sufficient sample, and the machine "timed out" before Smith provided an adequate sample. No further breath test was administered. Smith argues that the result of the initial sample was not admissible because the State could not show that two samples were taken and did not differ by greater than .020 grams alcohol concentration.

This Court has addressed a similar situation in *Thrasher v. State*,[16] where the defendant's first sample was sufficient, but his second sample was not because "Thrasher failed to blow enough air into the machine during the second attempt."[17] Thrasher claimed that he was unable to blow a second sample due to asthma, so his

---

[15] (Emphasis supplied.)

[16] 292 Ga. App. 566 (666 SE2d 28) (2008).

[17] Id. at 567.

8

failure to provide a second sample should not have been considered a "refusal" under OCGA § 40-6-392 (a) (1) (b). This Court rejected the argument, ruling that determining the reason for the failed second sample was for the trial court, which sat as the trier of fact when determining the admissibility of evidence.[18]

In the instant case, the officer administering the test stated that Smith "blew the first time with no problem[,] and I'm not sure if he saw the results and decided not to, but he tried it the second time. For whatever reason the machine expired." It was for the trial court to evaluate the credibility of the witness, resolve disputed facts, and determine the reason for the failed second sample.[19] Based on the record before us, we discern no clear error in its finding that the first sample was admissible.[20]

3. Smith argues that the State has constructive possession of the computer source code for the Intoxilyzer 5000, and the trial court erred by admitting the test

---

[18] See id. at 568 (1).

[19] See id.

[20] See id. See also *Davis v. State*, 286 Ga. App. 443, 446 (649 SE2d 568) (2007); ("[T]he fact that a defendant failed or refused to provide a second sample, as requested by the State, did not affect the admissibility of the results of the first sample."), quoting *Chamberlain v. State*, 246 Ga. App. 423, 425 (541 SE2d 64) (2000).

9

results despite the State's failure to disclose it under OCGA § 40-6-392 (a) (4).[21] That Code section provides that "[u]pon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney." We disagree.

Leading up to trial, Smith sought disclosure of the computer source code by seeking witnesses from CMI, Inc., which manufactures the Intoxilyzer 5000 and which is located in Kentucky. Smith obtained a certificate of materiality in the trial court and sought a ruling in a Kentucky court allowing him to compel out-of-state witnesses to testify about the source code during his Georgia DUI prosecution. The Kentucky court issued an order denying the request.

---

[21] We reach the issues in Divisions 3 and 4 because Smith, in pre-trial briefing and at argument during a pre-trial hearing, specifically argued those issues in support of his motion to exclude the evidence and for a continuance. Upon hearing the argument, the trial court denied the motions and could not have done so on some alternative ground without ruling on those issues. Therefore, the issues are properly before this Court. See, e.g., *Rouse v. Dep't of Natural Res.*, 271 Ga. 726, 728 (1) (524 SE2d 455) (1999) ("[B]ecause [the appellant] raised numerous issues, each of which would have entitled him to prevail [in the trial court], the trial court must necessarily have rejected each of those issues to [reach its] decision. We thus conclude that the superior court's ruling is *effectively a distinct ruling on the constitutional issues* and is a sufficient ruling to permit Rouse to raise his constitutional challenges on appeal.") (emphasis supplied).

10

Smith argues that the State nevertheless should have disclosed it to him because "[t]he State of Georgia has always had the power to negotiate a contract with CMI that would give it access to the source code . . . [or] to switch to a different machine for which the source code is available." Neither of these arguments address the case here, which is that the State, so far, has not. It is undisputed that the State lacks actual access to the source code.[22]

Nevertheless, Smith continues to argue that CMI is essentially a state actor because it is the exclusive provider of the Intoxilyzer 5000 used for breath testing in Georgia. As support he cites federal law applicable to civil claims under 42 USC § 1983.[23] That argument is misplaced here because the issue is the admissibility of a breath test under OCGA § 40-6-392. That Code section outlines in detail the criteria for admissibility and disclosure of scientific testing in DUI cases. Smith cites no Georgia precedent requiring disclosure of the source code in this case, and in light of

---

[22] Smith makes a variety of factual assertions in his appellate brief to support his argument that the State has colluded with CMI to prevent defendants from challenging the protocols and methods of the Intoxilyzer 5000. "[F]actual assertions in briefs that are unsupported by the record cannot be considered in the appellate process." *Parker v. State*, 283 Ga. App. 714, 717 (2) (d) (642 SE2d 111) (2007) (citation and punctuation omitted).

[23] See, e.g., *Willis v. Univ. Heath Svcs.*, 993 F2d 837 (11th Cir. 1993).

11

this clear legislative directive on the issue, we decline to depart from the legislative scheme in this case.[24]

4. Smith next argues that the trial court violated his rights to compulsory process, due process, fair trial, and confrontation by proceeding to trial without waiting for resolution of his appeal of the Kentucky court's adverse order. These challenges fail for the reasons stated in *Phillips v. State*.[25]

---

[24] Smith does cite one Georgia case, *State v. Smiley*, 301 Ga. App. 778 (689 SE2d 94) (2009), but that case is physical precedent only. See Court of Appeals Rule 33 (a). Furthermore, that case explicitly avoided addressing the question of whether the source code is required by law to be produced, and instead, in the absence of a transcript of the proceedings below, affirmed the trial court's exercise of discretion by suppressing evidence in light of a bad faith discovery violation on the part of the State. See also *Cronkite v. State*, 293 Ga. 476, 479 (745 SE2d 591) (2013) (affirming the denial of a certificate of materiality for a source code witness in the absence of any "evidence of facts supporting the existence of a possible error in [the defendant's] specific breath test results such as discrepancies in the operation of the Intoxilyzer 5000 machine itself").

[25] __ Ga. App. __ (Case No. A13A0991). To the extent that Smith argues that the materials he sought from CMI constituted *Brady* material, see *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), and that his failure to obtain them violated his due process rights, he has failed to demonstrate that the State possessed evidence favorable to the defense; that the prosecution suppressed the favorable evidence; and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. See id.; *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994) (establishing factors defense must show). Therefore, that argument fails.

5. Finally, Smith points out that the trial court failed to make explicit findings when denying his pre-trial motion for discharge and acquittal for an alleged constitutional speedy trial violation. "It is imperative . . . that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker v. Wingo*.[26] Absent such findings, there is no exercise of discretion for this Court to review."[27] Accordingly, we affirm the finding of guilt in light of our rulings above, and we remand for entry of a proper order addressing the speedy trial motion pursuant to *Barker v. Wingo*.[28]

*Judgment affirmed in part and case remanded with direction. Boggs, J., concurs. McFadden, J., concurs in Divisions 1, 2, 4, and 5 and in the judgment.*

---

[26] "The *Barker* test requires the court to consider: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right [to speedy trial], and (4) the prejudice to the defendant. The fourth factor requires the court to consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." *Higgenbottom v. State*, 288 Ga. 429, 430 (704 SE2d 786) (2011).

[27] Id. at 430-431.

[28] See id.

A13A1282. SMITH v. THE STATE.

MCFADDEN, Judge, concurring in Divisions 1, 2, 4, and 5 and concurring in the judgment only as to Division 3.

I concur in Divisions 1, 2, 4 and 5. I concur in the judgment only as to Division 3. I write separately to explain that this opinion does not foreclose the argument that the state may be required to disclose the source code under OCGA § 40-6-392 (a) (4), should a proper evidentiary foundation be made. As the majority observes in footnote 21, Smith has not supported his factual assertions of collusion between the state and

CMI with citations to evidence in the record. But should a defendant show by the admission of evidence that CMI is a state actor, whether the state can be compelled to disclose the source code under OCGA § 40-6-392 (a) (4) is an issue for another day. Because I do not agree with all that is said in Division 3, that division is physical precedent only. See Court of Appeals Rule 33 (a) ("[A]n opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said.")